## Samuel Torbert and Beulah his wife *against* Jacob Twining and Thomas Story.

Parol evidence is not admissible to supply, contradict or explain the written words of a will. On a devise of lands in trust, the rents and profits to go to a feme covert during life, unless it can be collected from the words of the will, that it was intended for her separate use, her husband is entitled to them.

CASE stated for the opinion of the court.

David Twining made his will, dated 25th October 1791, and therein (*inter alia*) devised as follows: "Item, I give and "devise to my daughter Beulah," (one of the plaintiffs) "the "use, issues and profits of my lands and tenements, not al- "ready bequeathed, situate in the township of Newtown in "the county of Bucks and state of Pennsylvania, to hold to "her during her natural life, and no longer; but if she should "have issue to live to the age of 21 years, and there should "be two or more male heirs, then my will and mind is, that "it should be equally divided between them, share and share "alike. But if she should have no male heirs, but all fe- "males, then it is my will and mind, that the one fourth "part of my lands bequeathed to my daughter Beulah Torbert "during her natural life, shall be equally divided among "them, and the other three fourths to be equally divided · "amongst the male heirs of my three other daughters, namely, " Sarah Hutchinson, Elizabeth Hopkins and Mary Leedom, "share and share alike. I also give and bequeath to my "daughter Beulah Torbert, 200 acres of land which I pur- "chased of Richard Leedom in Westmoreland county, to "hold to her the said Beulah, her heirs and assigns forever. "I also give unto my said daughter Beulah Torbert, a brown "mare five years old, &c."

The testator afterwards, on the 12th November 1791, made a codicil to his said will, and therein devised as follows: "Item, whereas I have given in my last will, all my lands "that are not already bequeathed, unto my daughter Beulah " Torbert, for and during her natural life, with all the rents, "issues and profits, but on further consideration of it, I do "give all the lands and tenements and appurtenances, there- "unto belonging unto my loving brother, Jacob Twining, "and friend Thomas Story, in trust for the use, benefit and "behoof of my daughter, Beulah Torbert, for, and during her "natural life, they or the survivor of them to rent out in the "best manner they can, so *that no waste is made of [*433 "the timber, and the best care that can be, to preserve "the land from abuse, by extravagant tillage, she my said "daughter Beulah to have all the rents, issues and profits "arising from the aforesaid plantation, for and during her "natural life; and at her decease, I do give the aforesaid

[Torbert *v.* Twining et al.]

"plantation unto the male heir or male heirs of her body, if
"they should live to the age of 21 years, to be equally di-
"vided betwixt them, share and share alike; but if she should
"have no male heirs, but all females, then it is my will and
"mind, that the one fourth part of the land so bequeathed in
"trust shall be equally divided amongst them, share and
"share alike, and the other three fourths, I do give to be
"equally divided amongst the male heirs of my other three
"daughters, share and share alike," &c.

The above will and codicil were duly proved by the de-
fendants, executors and trustees therein named.

The defendants took and sold a crop of wheat, which was
growing on the plantation devised to them in trust for the
said Beulah, at the death of the testator, and received the
money for the same, to the amount of 77l. 15s. 5d. They
also received the rent of the mansion house, barn, stables,
and three small houses, situate on the said plantation, since
the death of the said David Twining, from November 1791,
until April 1792, to the amount of 3l. 13s. 8d. There is also
9l. 6s. 6d. due for interest on the first mentioned sum, all
which have been duly demanded by the said Samuel Torbert
in right of his said wife from the said defendants, and by
them refused to be paid to him before the institution of this
suit.

It is agreed that the depositions of Jacob Twining, Eliza-
beth Twining, and John Story, be made part of this case, but
subject to all legal objections.

If the court should be of opinion for the plaintiffs, then it
is agreed that judgment shall be entered for 90l. 15s. 7d. (the
amount of the said several sums) damages and six pence costs.
If the first mentioned sum should be considered as part of the
personal estate of the testator and going to the executor, then
judgment to be entered for the plaintiffs for the residue,
amounting to 13l. os. 2d. damages and six pence costs; and
if on the whole, the court should be of opinion for the de-
fendants, then judgment to be entered for the defendants.

[By the depositions above referred to, it appears, that the
testator declared in his last sickness, that his intention in
making his codicil was, that the real estate therein devised to
his daughter Beulah, should be for her sole and seperate use;
*434] and after *he had made his codicil, he declared, that
he expected he had effected his purpose, and that her
husband could not intermeddle with it.]

Mr. Condy for the plaintiffs, then objected that the deposi-
tions annexed to the case could not be read in evidence, being
taken *ex parte*, but at length waived his exception, on Mr.
Wilcocks (counsel for the defendants) declining to go on with
the argument, and agreeing, that if the court should be of
opinion, that the parol evidence was admissible, his clients
should have the benefit of a cross examination.

[Torbert *v.* Twining et al.]

He then stated a technical objection to the deposition of Jacob Twining, who was one of the defendants.

As to the two other depositions, he argued, that parol evidence was not admissible to explain a devise of lands. The ground was, that frauds should be prevented, and the titles to real property should be open and permanent, not subjected to change by the death or absence of witnesses. Such property would otherwise be insecure and purchases become games of hazard. A testator may often make use of expressions, either before or after the making of his will, merely to quiet his family, without harbouring the most remote idea that such loose words should controul his written will. He cited the following cases: Lord Chancellor Talbot refused to receive parol evidence, in order to establish a legal right in one executor, under very hard circumstances. He laid down the rule, that the farthest parol evidence has gone, was to rebut an equity, or resulting trust, and where such evidence would support the intentions of the testator, consistent with the written will. Forrest. 240. Brown *v.* Selwyn. And the decree in this case was affirmed on appeal to the house of lords, who would not suffer even the respondent's answer to these matters, to be read. 4 Bro. Parl. Cas. 179, 186.

The counsel for the residuary legatee offered to read the testimony of the attorney who drew the will, that he had express directions to give the personal estate in a certain way; Lord Hardwicke said it could not be done, though there were some things here which might make a judge wish to admit it. He lays down the rule, that parol evidence on wills, is admissible in two cases only: 1st, To ascertain a person. 2d, With respect to resulting trusts, to rebut an equity as to personal estate; as where one makes a will, and appoints an executor with a small legacy, and the next of kin claim the residue. 2 Atky. 373. Ullick *v.* Litchfield.

Lord Hardwicke declared himself extremely tender, even as *to the admission of parol testimony, to rebut an [*435 equity, arising from a resulting trust. 2 Vez. 28. Blinkhorne *v.* Feast.

Parol evidence is not admissible to shew that the testator meant to use general words, in this or that particular sense. 1 Vez. 231. Goodinge *v.* Goodinge.

Parol evidence not admissible to contradict the words of a will. 2 Stra. 1261. Lowfield *v.* Stoneham.

The preceding authorities merely respect personal estate, concerning which, it is well known, that considerable latitude is used in courts of equity. The cases on wills of lands are much stronger.

The construction of wills must be collected from the written words and not by averment out of them; it would be pregnant with inconvenience, if no one could know by the will itself what construction to make or advice to give. 5 Co. 68. b. Lord Cheyney's case.

[Torbert *v.* Twining et al.]

A devise of lands cannot be explained by parol proof touching the declarations of the testator, or the instructions given by him for the making his will. 'Wills concerning lands must be in writing, and we cannot go against the act of parliament. 2 Vern. 98. Towers *v.* Moore.

In a will of lands, no regard is to be had to the parol declarations of a testator. These cases must stand on the written words of the will, and the law was the same even before the statute of frauds and perjuries. 2 Vern. 337, 339. Lord Falkland *v.* Bertie.

No proof ought to be received to supply the words of a will; nor is any regard to be had to expressions before or after the will; but the will that must pass the land must be in writing, and must be determined only by what is contained in the written will. 2 Vern. 624, 625. Strode *v.* Lady Russel.

It is possible, that cases on contracts may be cited in support of the opposite doctrine. It is admitted that chancery goes further in such cases, to find out the real intention of the parties, than in others. When a person seeks for the specific execution of an agreement, it is a trite remark, that he who asks for equity, must do equity. Yet parol evidence cannot be offered to explain a written agreement complete in itself, though it may be offered to shew that something intended to be inserted in an agreement has been omitted by mistake or fraud. Powel on Cont. 431, 432. And the true ground on which these decisions rest is, that the proof offered is no variation of the agreement, but consistent therewith, and explanatory of it only, and strong circumstances of fraud or mistake pervade all these cases; for such evidence is never *436] suffered to contradict or explain away an *explicit agreement, because that is in effect to vary it, in respect of things specifically expressed therein. Ib. 434, 435.

Mr. Wilcocks for the defendants. The parol evidence adduced is not in contradiction of the will, but in support of the true intention of the testator. It is admitted, that all the cases in the books cannot be reconciled. What real distinction can there be between the cases of wills and deeds? or between personal and real estate, when the value of the former may much exceed the latter? 2 Wms. 136. On principles of solid justice, ought not a clear mistake in a will to be rectified equally as in a deed? Whether these depositions shall be read must depend on general principles.

A parol agreement was established by the testimony of Sir John Coel alone, against the trust expressed in a deed indented, in consideration of marriage, though the lady had a fortune of 30,000l. in personal property, and lands of the yearly value of 1200l. and more. 2 Cha. Ca. 180. Harvey *v.* Harvey.

And this case was approved of by Lord Ch. Baron Rey-

[Torbert *v*. Twining et al.]

nolds. Fitzgib. 213, 214. Fitzgerald and wife *v*. Faucon-
berge *et al.*

Though there be no express trust in deed, yet as it might
be collected from circumstances arising out of the assignment
itself, to be inconsistent with an absolute disposition, the lord
chancellor admitted parol proof to explain this transaction in
avoidance of fraud. 1 Atky. 447. Hutchins *v*. Lee.

Parol evidence admitted to prove mistake in an agreement.
For how, says Lord Hardwicke, can a mistake be proved but
by such evidence? It is not read to contradict the face of the
agreement, which the court would not allow, but to prove a
mistake therein which cannot otherwise be proved. 1 Vez.
456. Baker *v*. Paine.

On a devise of lands to trustees in trust to pay several an-
nuities, and the residue to go to the testator's right heirs of
his mother's side forever, parol evidence was admitted to
prove, that the heirs of the mother's mother's side, (and not
the heirs of the mother's father's side,) were intended. 2
Wms. 135, 136. Harris *v*. Bishop of Lincoln.

One by will makes A, B and C executors in trust, and
gives them a legacy of 20l. a piece for a remembrance, above
their charges; two of the executors confessed the trust to be
for the wife, though the other denied it. Parol proof was ad-
mitted that this was in trust for the wife only. 2 Vern. 99.
Pring *v*. Pring.

One by will subjects his real estate to pay his debts, and
makes his wife executrix; parol proof was admitted to prove
the testator's declarations, that his executrix should have his
per*sonal estate, exempt from debts. 2 Vern. 252, [*437
253. Gainsborough *v*. Gainsborough.

It is objected against Jacob Twining, that he is an incom-
petent witness, being a defendant: but on looking into the
will, he will be found to be in no wise interested. But this
point need not be pressed, as the other depositions prove the
same facts in substance.

By the court. There is a clear substantial difference be-
tween deeds and wills in their very essence, from whence
must result a variation in the rule of evidence, applicable to
each. Deeds are mere evidences of a man's acts and inten-
tions, and where these acts or intentions, either through
mistake or fraud, are not properly committed and compre-
hended in the written instrument, the law will admit supple-
mentary proofs; but positive law has subjected the deposition
of real estate by will, to the restriction of its being in writing,
and hence it necessarily follows, that the words of the written
will must control the operation of the devise, and that it
must be judged of *ex visceribus suis.** If expressions of the

---

* The words of the act of assembly of 4th Annæ, § 6, (1 St. Laws, 31,) pur-
sue the language of the stat. 29 Car. 2, c. 3, § 22, (of Frauds and Perjuries.)
"No will in writing shall be repealed, nor shall any clause, devise or bequest

[Torbert *v.* Twining et al.]

testator, before or after the making of his will, could increase or abridge the effects of the words used in the writing, what confusion, uncertainty and inconvenience must issue! what an inlet would it be to frauds and perjuries! Since the case of Brown *v.* Selwin* and *è contrâ,* no such parol testimony has been received in the construction of wills, and we cannot now alter or shake the rule of evidence, thus wisely settled, to adapt it to the hardship of any particular case; and therefore we are unanimously constrained to overrule the depositions being read.  [Vid. Vez. jr. 415.  S. C. 3 Bro. Cha. Ca. 446.]

Mr. Condy proceeded.  There is nothing in this will or codicil, which evinces the testator's intentions that his daughter Beulah *should take any part of the property devised to her, for her separate use, independent of her husband.  Unless such intent clearly appears, the court will not infer it.  It may be said, that unless such were the testator's views, no reason can be assigned for the making of his codicil; for that under our construction, no alteration is effected of his will.  To this it may be answered, that he appears to have created a trust for the benefit of the issue who were to take after the life estate, and guards expressly against the waste of timber and extravagant tillage; but he has not directed the profits to go to the use of Beulah alone, and subject to her controul.  He might choose to put the superintendence of his farm in persons acquainted with husbandry, well knowing that Doctor Torbert, as a professional man, was unskilled in farming.

Limitation of estates, whether by way of trust, or by estates executed at common law, are to be governed by the same rules.  2 Vern. 342.

Separate maintenances have been viewed with a jealous eye by courts of equity; and Lord Hardwicke has said that separate provisions very often occasion the very evils they were intended to prevent.  1 Atky. 276.  The husband, by the laws of this country, and of every well regulated government, is the head of the family, and the best judge of their finances. A custom for a feme covert to surrender her copyhold lands, without the assent of her husband, is bad: it is said to be contrary to law and the policy of the nation, and tends to

___

"therein be altered or changed by any words, or will, by word of mouth "only," &c.  [Vid. 4 Bro. Parl. Cas. 185.]

* This case seems to have fully established the rule, that no parol evidence to supply or contradict the words of a will, or to explain the intention of the testator, is admissible, when the words used are unambiguous and intelligible.  So Stratton *v.* Payne. 3 Bro. Parl. Cas. 257.  Errington *v.* Broughton. 7 Bro. Parl. Cas. 12.  Chamberlayne *v.* Chamberlayne. 2 Freem. 52.  Cole *v.* Robinson. 1 Salk. 244.  Maybank *v.* Brooks. 1 Bro. Cha. Rep. 85.  Cas. Temp. Talb. 242.  Williams's note, (k) Ib.  (See the case of Lady Fordyce *v.* Willis, 3 Bro. Cho. Rep. 577, where Lord Thurlow refused to receive parol testimony, under circumstances of peculiar hardship.)

[Torbert *v.* Twining et al.]

make wives independent of their husbands.   2 Wils. 1, 2. A legacy of 100l. to a feme covert, who had parted from her husband, which was then well known to the testator, and that the wife was then much straitened for want of maintenance, and the executor having paid it to the wife, was decreed to pay it again to the husband with interest.   1 Vern. 261. The legal power of the husband over the estate of the wife is very great.   He may dispose of a term assigned to her in trust before marriage, 1 Vern. 7, 18; or which she claims for her separate use under a former husband, 2 Vern. 270; unless the term be a trust from the husband himself for his wife's benefit.   2 Atky. 208.   Vid. 2 Wils. 127.

· If the court should be of opinion with the plaintiffs on this point, there can be little difficulty to whom the corn growing on the lands devised to the defendants for the use of Beulah Torbert, at the time of the testator's death, shall belong. [See Winch 51. Cro. El. 61.   1 Rol. Ab. 727.   Hob. 132.]

Mr. Wilcocks *è contrâ.*   When the testator, "on further "consideration," determined to make his codicil, he must have *intended some material and substantial altera-   [*439 tion in his will.   The idea suggested, that he meant to create trustees, and put the lands under their management, is far from being satisfactory, unless he had more in contemplation.   He must have meant to secure a support and livelihood to his daughter, independent of her husband's controul, or his codicil could be but of little avail.   No certain terms are necessary to vest a separate use of chattels in a feme covert.   3 Atky. 393.   Technical words are not necessary to make a separate trust for the wife.   The words "livelihood "of the wife," are sufficient to shew the intention of the giver, that it should be for her sole use.   3 Atky. 399.

The rights of married women are much better attended to of late years than formerly, and the decisions of the courts of equity have been peculiarly favourable to their interests. He inferred, from a comparison of the will and codicil, that the testator must have intended the profits of these lands for the sole benefit of his daughter Beulah.

M'Kean, C. J.   Unquestionably the intention of the testator is the great polar star by which we must regulate our construction of wills.   But this construction must be bounded by the words of the will itself. . The general rule has uniformly been, that unless the intent can be collected from the words, it is in vain to urge it; for otherwise we should be making a man's will, not construing it.   Vid. 1 Atky. 273, 274.   We may, with Lord Talbot, (Forrest. 242,) "privately "think," that the devise to Mrs. Torbert, was for her separate use; but "we are not at liberty by private opinion, to "make a construction against the plain words of a will." No technical, or other expressions whatever, such as "for

[Torbert *v.* Twining et al.]

"the livelihood of the wife," &c. are inserted in the will, from which we can collect, or necessarily infer, that this was meant as an independent provision for the daughter. Judging on the face of the will and codicil, I can discover no clear intent disclosed by the testator, that the rents and profits of the plantation should not be subject to the controul, or intermeddling of the husband of Beulah; and unless such intent does not appear, the law gives him the whole, in right of his wife.

As to the corn growing in the ground at the time of the testator's death, it cannot belong to the defendants, as executors.

Shippen and Yeates, Justices, fully concurred therein.

Smith, J.  I own I have serious doubts on the subject.  It appears by the cases in 3 Atky. already cited, that no form of *440] * words is necessary to create a separate trust for the feme, and I have met with an authority in 3 Bro. Cha. Rep. 381, that a legacy to a feme covert, "her receipt to be a "sufficient discharge to the executors," has been decreed equivalent to saying "to her sole and separate use." Besides in England, the plaintiff's remedy against the trustees must have been in chancery, and if the husband came into equity to demand these profits, they would put terms on him and oblige him to make a proper provision for his wife.  2 Bro. Cha. Ca. 351.  2 Eq. Ca. Ab. 146.  1 Wms. 459.  Bunb. 86.  Prec. Cha. 548.  2 Wms. 639.  Forrest. 43. 213.

Yeates, J.  Even in England, I doubt greatly whether the Lord Chancellor would interpose his authority, if the same facts were disclosed to him, as came to the knowledge of the Chief Justice and myself, at the last assizes for Bucks county, judicially.  It appeared to us that Mrs. Torbert left her husband without cause, refused to return to him on overtures made her, and prosecuted him for adultery without cause, merely to found certain proceedings against him for a divorce, in the state of Connecticut.

M'Kean, C. J.  The chancellor clearly would not interpose in such a case.

Judgment for the plaintiffs for 90l. 15s. 7d. damages, and sixpence costs.

In 4 R., 67, KENNEDY, J., said that the decision of Torbert *v.* Twining had become a rule of property in the state.
Referred to in 7 S. & R., 114.