[PHILADELPHIA, FEBRUARY 4, 1833.]

EVANS and Wife *against* KNORR executor of NORTON.

Testator devises to *G. K.* his executor, and to his heirs and assigns, a certain tract of land, which he purchased of *W. S. E.*, with the appurtenances; also, all the goods and chattels assigned to him by the said *W. S. E.*, to hold to him, the said *G. K.* his heirs and assigns *in trust*, only to and for the sole and separate use of *A. E.*, the wife of the said *W. S. E.*, and the heirs and assigns of her the said *A.* for ever, so that the same shall not be in any manner or way whatever, subject to any of the debts, contracts, or engagements of her husband. "I *also* give and bequeath unto the said *G. K.* the sum of one thousand dollars *in trust*, for the use of her the said *A. E.*"

*Held*, that the bequest of one thousand dollars, was not for the sole and separate use of the wife, but went to the husband.

CASE stated for the opinion of the court.

*Thomas Norton*, the defendant's testator, by his last will and testament, dated the 9th day of the 1st month, 1821, and duly proved, among other things, devised as follows:—" I give and devise unto my friend *George Knorr*, my executor hereinafter named, and to his heirs and assigns, my tract of land, situate on the *Susquehanna*, containing four hundred acres or thereabouts, which I purchased of *William Savery Evans*, with the appurtenances; also all the goods and chattels assigned to me by the said *William Savery Evans*, to hold to him the said *George Knorr*, his heirs and assigns, in trust only

(Evans and Wife *v.* Knorr executor of Norton.)

to and for the sole and separate use of *Ann Evans*, the wife of the said *William Savery Evans*, and the heirs and assigns of her the said *Ann* forever; so that the same shall not be in any manner subject to any of the debts, contracts or engagements of her husband. I also give and bequeath unto the said *George Knorr*, the sum of one thousand dollars in trust for the use of her the said *Ann Evans*."

The case is to be considered as if a refunding bond had been filed before the institution of the suit; and it is agreed that such bond shall be filed or given before the legacy is received.

The question submitted to the court is, whether the plaintiffs are entitled to recover the legacy of one thousand dollars, mentioned in the case?

If the court shall be of opinion, that they are so entitled, judgment to be entered for the plaintiffs, for the amount of the legacy and arrears of interest unpaid. If the court shall be of opinion, that they are not entitled to recover, judgment to be entered for the defendant.

*Chauncey* for the plaintiffs.

*Potts* for the defendant.

The opinion of the court was delivered by

Kennedy, J.—This is a case stated for the opinion of this court, from which it appears, that *Thomas Norton*, by his will dated the 9th of *January*, 1821, *inter alia*, devised as follows : " I give and devise unto my friend *George Knorr*, my executor hereinafter named, and to his heirs and assigns, my tract of land situate on the *Susquehanna*, containing four hundred acres or thereabouts, which I purchased of *William Savery Evans*, with the appurtenances ; *also*, all the goods and chattels assigned to me by the said *William Savery Evans*, to hold to him the said *George Knorr*, his heirs and assigns *in trust* only to and for the sole and separate use of *Ann Evans*, the wife of the said *William Savery Evans*, and the heirs and assigns of her, the said *Ann* forever, so that the same shall not be in any manner or way whatever subject to any of the debts, contracts or engagements of her husband.

" I *also* give and bequeath unto the said *George Knorr*, the sum of one thousand dollars in *trust* for the use of her the said *Ann Evans*."

The question to be decided is, whether the one thousand dollars are given in trust for the sole and separate use of *Ann Evans*, or not ?

In *Torbert* v. *Twining*, 1 *Yeates*, 432, the rule that was previously established, and which still prevails in *England*, was recognized and adopted here by this court. The rule is, that the intervention of trustees, to whom a devise or bequest is made for the use of a married woman, is not, of itself, sufficient to determine it to be for her *separate* use. See *Dakins and wife* v. *Berisford*, 1 *Cha. Ca.* 194, and *Lumb* v. *Milnes*, 5 *Ves.* 517.

(Evans and Wife *v.* Knorr executor of Norton.)

In the case of *Torbert* and *Twining,* the testator by his will, dated the 25th of *October,* 1791, first gave to his daughter, (the wife of *Samuel Torbert,*) the use, issues and profits of his lands and tenements, not already bequeathed.  Afterwards, on the 12th of *November* following, by a codicil to his will, after reciting this devise and bequest, he proceeded as follows : " but on further consideration of it, I give all the lands, (meaning the same lands,) and tenements and appurtenances thereunto belonging to my brother, *Jacob Twining,* and friend, *Thomas Story,* in trust for *the use, benefit and behoof* of my daughter for and during her natural life, they (the trustees) or the survivor of them, to rent out in the best manner they can, so that no waste is made of the timber, and the best care that can be to preserve the land from abuse by extravagant tillage, *she my said daughter to have* all the rents, issues and profits arising from the aforesaid plantation during her natural life."

This court held that *Samuel Torbert,* the husband of the testator's daughter, was entitled to the benefit of this devise, and that it was not to be construed a devise to the trustees for her separate use.  This decision has never been over-ruled, and must be regarded as having become a rule of property in the state.  It is not impugned in the slightest degree by the decision in *Jamison* v. *Brady,* 6 *Serg. & Rawle,* 466.  On the contrary, the court expressly disavows questioning its validity ; and ruled in that case, that a bequest to a *feme covert* " for her own use," was equivalent to a bequest given to her for " her *sole and separate use.*"  The emphatic word, " *own,*" was made the foundation of that decision, which is not in the present case.

But it has been contended that the clause giving the legacy of one thousand dollars, is connected with the preceding clause, by the word, " also," and as in the preceding clause, the bequest of the goods, &c. is given expressly for the *sole and separate use* of *Ann Evans,* that the word, " also," was used by testator, to shew that he gave the thousand dollars to be held *in like manner,* and that the clause ought to be read thus, "I give and bequeath unto the said *George Knorr,* the sum of one thousand dollars, in trust, *in like manner,* for the use of her, the said *Ann Evans.*"

As authority for this construction has been cited, *Sheps. Touch.* 140, 141, where it is said, " If one devise his land thus, I give *Whiteacre,* to my eldest son and his heirs for his part ; *Item, Blackacre* to my youngest son for his part ; by this devise, the youngest son shall have the fee simple of *Blackacre.*  So if I give *Whiteacre* to *l. S. Item, Blackacre* to *I. S.* and his heirs ; by this devise *l. S.* shall have the fee simple of *Whiteacre* also.  Or if one devise *Whiteacre* to *I. S.* and then say, *Item, Blackacre* to *l. S.* and the heirs of his body ; by this devise he hath an estate tail in both *Acres.*"  For these several cases, there is no other reference than one in the margin to *Trin.* 30, *Eliz.*  The rule of construction which was adopted in those cases, is not given ; nor have I met with any report of the same date, in which they are contained and explained.

But by turning to some of the cases on this subject, all that has been set forth and quoted from *Shep. Touch.* will be found in other cases, and the rule for the construction put on these sentences, so fully explained as to shew that neither they nor yet any of the adjudications in respect to this matter, sustain the construction contended for by the counsel for the plaintiffs.

In the case now under consideration, the clause giving the one thousand dollar legacy, is an entirely distinct one from the preceding; and there certainly needs no reference or relation to it, in order to give it either meaning or effect, because it is complete and perfectly intelligible in itself. The word, " also," which is prefixed to the sentence, serves, as it most frequently does in wills, to point out the beginning of a new devise or a new bequest. It imports no more than, " *Item*," and is of the same signification in this place as " moreover," and cannot be construed to mean " in like manner," as if the testator had said, " I give and devise unto my friend, *George Knorr*, and to his heirs and assigns, my tract of land, situate, &c. with the appurtenances; *also*, all the goods and chattels assigned to me by the said *William Savery Evans*, to hold to him the said *George Knorr*, his heirs and assigns in trust, *only* to and for the *sole* and *separate use* of *Ann Evans*, (wife of the said *William Savery Evans*,) and the heirs and assigns of her, the said *Ann Evans* forever; *in like manner*, I give one thousand dollars." But thus framed, it must be observed, that this latter clause, would be imperfect of itself, and a reference to the preceding, would be indispensably necessary and proper to render it intelligible, and to get at the meaning and intention of the testator, for the legatee is not even named in it. In the will as it is drawn, we have an instance of this in the two clauses embracing the land and the goods, which are connected by the word, " also," which is obviously used there as a mere *copulative*. In the latter clause, embracing the goods, the agent or testator and the verb, indicating his act and will, do not appear, without which it is unintelligible and unmeaning, and to supply the omission, you must refer to the prior; and again in the latter, the *tenendum* is introduced, and the trust with its nature declared, which are not contained in the clause embracing the land, but by means of the copulative " also," are to be connected with it as well as the goods. Thus the imperfection in the second clause, renders a reference to the first necessary, and this relationship and dependance being once established between them, they are to be considered and construed as the component parts of one complete sentence mutually aiding and giving light to each other. Here we have this sentence in the will disposing of the land and the goods, which is perfect and complete; and the subsequent clause, which is the one giving the thousand dollar legacy, is equally so. And this latter is in no wise dependent upon the first, to make it more complete and more intelligible than it would be without any such clause or sentence as the first being in the will at all. Now it will be found upon reference to the authorities, that it is only where

the first sentence is complete, and the second so imperfect, or *vice versa*, as not to be intelligible without referring to the first or the one that is perfect, in order to supply the defect, that the word "also," can ever have the meaning of the words, "*in like manner*," given to it, or in causing the one clause to govern and direct the other. As in 1 *Roll. Abr.* 844. *Tit. Estate by Devise,* (*M.*) *pl.* 2. "If a man devise *Blackacre* to one in tail, and *also Whiteacre;* the devisee shall have an estate tail in *Whiteacre; for the whole is but one sentence,* and so the words which make the limitation of the estate belong to both." *Trin.* 40, *Eliz. B. R.* cited by *Fenner, Just.* to have been decided in bank. So in *Cole* v. *Rawlinson, Holt,* 744. *S. C. Ld. Raym.* 831, and 1 *Salk.* 234, decided in *B. R.* 1 *Anne,* where the testator "gave all his estate, right, title and interest, which he then had and all the term and terms of years which he then had or might have in his power to dispose of after his death, in whatever he held by lease from Sir *John Freeman,* and *also,* the house called the *Bell tavern* to *John Billingsley.*" It was ruled by the three *puisne* justices; contra, HOLT, C. J., that the devisee took a fee in the *Bell tavern,* "because, as they say, *it is but one sentence,* coupled by the words, "and also," and *governed by one verb,* whereby the preposition *in,* is carried unto the *Bell tavern,* so that it is a devise of all the testater's leasehold estate, and also in the *Bell tavern.*" See 1 *Salk.* 234, and 2 *Ld. Raym.* 832. In both these cases, the first clause, it will be observed, is perfect, but the second being altogether imperfect, rendered a reference of it to the first necessary, and becoming thus connected with it, they both make a whole sentence and as such were construed. Again in *Moore,* 52, 53, *pl.* 153, as early as *Pasch.* 5 *Eliz.* This case is put by DYER, Chief Justice, in the following form: "*Item.* I give the manor of *D.* *Item.* I give the manor of *S.* to *I. K.* and his heirs." Here, it will be observed, that the first clause is the imperfect one, and to render it intelligible, a reference must necessarily be had to the second, which makes it complete. The first is defective in not giving the name of the devisee, and the word, "*Item,*" is used as a copulative to connect it with the second clause, which gives the name of the devisee, and the quantity of estate intended for him, thus making the whole but one devise, and giving to the devisee a fee simple in both manors, as he said.

Now it is plain, that the cases cited from *Shep. Touch.* fall directly within the principle of these cases just referred to, because the same imperfection appears in either the first or second clause of each of them, and renders it therefore necessary to refer to the one, in order to make sense of the other.

But if a man devise in this manner, "*Item.* I give my manor of *Dale* to my second son. *Item.* I give my manor of *Sale* to my second son and his heirs," the devisee shall only take an estate for life in the manor of *Dale,* but a fee in the manor of *Sale.* So held by DYER, Chief Justice, and two of the *puisne* Justices. BROWN, Justice, dis-

senting.   *Pasch.* 5 *Eliz. Moore,* 52, 53, *pl.* 153, and considered the word, " *Item,*" as merely indicating a new devise.

So if " I devise *Blackacre,* to my daughter *F.* and to the heirs of her body engendered.   *Item,* I devise unto my said daughter *Whiteacre;* she shall have an estate for life only in *Whiteacre,* for as the court said, the word ' *Item,*' is not equivalent to *in the same manner.*" *Trin. B. R.* 40, *Eliz. per curiam.*   1 *Roll. Ab.* 844.   *Tit. Estate Devise, M. pl.* 1.   See also, 1 *Mod.* 100, and 1 *Sid.* 105, *per* Just. WINDHAM, to the same effect.   Here each clause is perfect and intelligible of itself, and must be construed according to the language employed by the testator in each.   And the word " *Item,*" imports nothing more than " moreover," " beside," or, " in addition thereto," and is used as I have already said, to shew that what follows it, is intended to be in addition to that which precedes or otherwise, as Lord HARDWICKE has said, 3 *Atk.* 438, " is only made use of to *distinguish* the clauses in the will."

In *Spirt* v. *Bence,* decided in the time of 10 *Car.* 1. *Trin. B. R. Cro. Car.* 368, on a devise of " all my pasture lands in *D.* to my youngest son, *Henry, And also* all bargains grants, covenants, which I have from *B.* my son *Henry* shall enjoy and his heirs forever ;" it was held that *Henry* took only an estate for life in the pasture lands in *D.*   And the court there said that the word " also," was no more than the word " and," and should not extend to the quantity of the estate.   Again in *Hopewell* v. *Ackland,* 1 *Salk.* 239, and reported also in *Com. Rep.* 164, where in the argument in *page* 166, the distinction which I have mentioned, is supported and illustrated with great force and perspicuity.   The testator there devised as follows : " I devise my manor of *Bucknall* to *A.* and his heirs.   *Item,* I devise all my lands and hereditaments to the said *A.*   *Item,* I devise all my goods and chattels, money and debts, and *whatever else I have not before disposed of* to the said *A.* he paying my debts and legacies."   It was urged that the word ' *Item,*' conjoined the sentences and carried on the testator's intent, and imported a meaning to give the *like estate,* as was before expressed in the preceding sentence.   But TREVOR, Chief Justice, who delivered the opinion of the court, said : " *Item,* is an usual word in a will to introduce *new distinct matter ;* therefore a clause thus introduced is not influenced by nor to influence a precedent or subsequent sentence, unless it be of itself *imperfect* and *insensible without reference ;* therefore, not here, when *both clauses* are perfect and sensible."   And for this reason the court held that the second clause conferred on *A.* only an estate for life, notwithstanding he took a fee in the manor of *B.* under the first clause ; and likewise, again in the third, under the words, " whatever else I have not disposed of," between which and the second clause, the word " also," was introduced a second time.

In *Childs* v. *Wright,* 8 *Term R.* 64, where the testator devised as follows : " I give and devise unto my grandson, *I. W.* all my lands, freehold, copyhold and leasehold in *A.*   *Also,* I give and devise unto

(Evans and Wife *v*. Knorr executor of Norton.)

my grandson, *I. W.* all my *estate*, freehold and copyhold in *B*," it was held that *I. W.* took only a life estate in the devisor's estate in *A.* although he had a fee given to him by the immediately succeeding clause under the term *estate* in the lands in *B.* and it is not even suggested that the word " also," ought to make it otherwise.  Each clause was perfect of itself; and therefore, although the word "also," stood between them, it could give the one no bearing or influence upon the other.

The last case to which I will refer on this point, is *Fenny* v. *Eustace*, in 4 *M. & S.* 58, where the rule and the distinction with respect to the use and meaning of the word " also" in wills, is fully recognized and applied by the court as in the cases previously stated.

The husband is bound for the payment of the wife's debts.  He is bound likewise to support and maintain her under all circumstances ; and the law having imposed these obligations and duties upon him, has at the same time, gone so far in furnishing the means, as to give him a right absolutely to all her personal estate, as well as a right to the use of her real estate, at least during the coverture; of which he is not to be deprived without *clear* and *unequivocal* evidence, that it was the intention and will of the donor to give it to the wife, so that it should not be subject in any way to the control of the husband.   Mr. *Roper* says, "courts of equity will not deprive the husband of the right to participate in his wife's property, unless a *clear* intention be manifested by the testator, that the husband is not to derive any benefit from the disposition." · 2 *Roper on Leg* 296.

The Vice Chancellor in *Lumb* v. *Milnes,* 5 *Ves.* 520, 821, says: " The point is, whether there is any thing to show, the husband was not intended to be entitled to what every husband is entitled to ; at least a participation by him with his wife, whose debts he is bound to discharge, and whom he is bound to maintain.   It *is necessary* to shew a *decided intention,* that the husband shall have *no interest whatever*."

So far as rules have been adopted and settled in the construction of wills, it is no doubt greatly for the interest of the community, that we should abide by them, for they are and ought to be so considered, as part of our land-marks.   Indeed, it has often been regretted by some of the best and most experienced judges, that the same technical words and rules had not been adopted and required in respect to the making and construction of wills, that prevailed in regard to deeds, as it would have prevented many disputes which have arisen and will still continue to arise from these sources.

Although in construing wills, the intention of the testator is the cardinal or governing rule, yet there are also some rules on this subject of a fixed character ; one indeed, which in most instances where it is applicable, is thought to be opposed to the intention of the testator.   For example, a devise of land *eo nomine* to a person without words of inheritance, or other expression, declarative of the quantity of estate, which the devisee shall have in the land, gives to him by

a fixed rule of construction, only a life estate, when it is believed in most cases of the kind, that a fee was intended by the testator.   It is also a rule, as I conceive, particularly applicable in construing wills, because strongly indicative of, and subservient to, the testator's intention, that when he has in one part of the will shewn his knowledge of the technical form used in drawing a devise or bequest with a view to accomplish a precise and definite object by using and adopting it, and again in another devise or bequest in favour of the same person, uses words, that without the first being employed in the same will, would not be held to be of the same import; or even uses words in the second case of doubtful import, such as might or might not have been intended to mean the same thing with the technical form of words used in the first devise or bequest, the design and intention of the testator must be considered different in the second case from what it was in the first, and the effect will not be the same in both cases ; because it cannot be supposed that a man of the least sense, would use terms of dubious import, to express the same purpose, after shewing that he was acquainted with the technical language used for declaring it with positive and absolute certainty.   This rule was applied in the case of *Wills* v. *Sayres,* 4 *Madd.* 409, (*American Ed.* 216,) where the testator bequeathed to the defendant six hundred pounds stock upon trust, to apply the dividends for the *sole* and *separate* use and benefit of his daughter, who was a *feme covert,* and *her receipts* were to be *sufficient discharges ;* and then bequeathed the residue of his personal estate and effects after payment of his debts, &c. to her "*for her own use and benefit ;*" it was held by the Vice Chancellor, that these latter words used in the residuary bequest, did not give to her a separate estate; stating as a reason, " that the testator, as to the same person, with respect to another gift, had appointed a trustee and *expressly* directed the application of it to her *sole* and *separate* use ; he knew therefore, the technical form of excluding the right of the husband," and his Honour said, "he could not infer that as to the residuary bequest, the testator intended *what he had not expressed.*"   The case of *Roberts* v. *Spicer,* 5 *Madd.* 491, (*American Ed.* 298,) was ruled in the same way upon the same principle or rule of construction.

Now it appears to me, that whether we regard the rules that have been applied to the construction of wills, or the intention of the testator himself, as our polar star, we cannot undertake to decide that it was certainly the intention of the testator to give the legacy of one thousand dollars to *George Knorr,* for the *sole* and *separate* use of his daughter, Mrs. *Evans.*   The intervention of the trustee of itself, as we have seen, is not sufficient for that purpose.   The rule of law is clearly in favour of the husband, that a gift or bequest to the wife, is in effect a gift or bequest to the husband, and he cannot be deprived of it, without an unequivocal intention manifested by the donor or the testator, that he is to have no interest or part in it.   The testator has shewn us here from the manner in which he has disposed

(Evans and Wife *v.* Knorr executor of Norton.)

of the land and goods in favour of his daughter to her sole and separate use, that he knew perfectly well how to declare and set it forth in such legal, precise and technical form, as to render it impossible to raise even a cavil against it; but when he comes to give the thousand dollars, he leaves out the important and definitive terms, " *sole and separate,*" which he had before so carefully inserted with respect to the land and the goods. No other rational motive can be assigned for this, but *design* on the part of the testator.

But even if it were doubtful, whether he intended this money for her sole and separate use, still the husband is entitled to it. The circumstance of the testator's giving it to the trustee, and not directly to the husband or the wife herself, is not a sufficient reason to authorise us to declare that he intended it for her sole and separate use. *Torbert* and *Twining,* was a much stronger case than the present in favour of the wife's sole and separate claim. For there the testator had first made his will, giving the property directly to the wife herself, and afterwards made a codicil, by which he gave it to trustees for *her use, benefit and behoof,* without making any other apparent alteration of his will. It is highly probable, that by this alteration, he thought he had put the property beyond the control of the husband, and secured it for the separate use of the wife ; or why should he have given himself the trouble of making the change that did not alter the effect, unless for the purpose of excluding the husband from all participation in the enjoyment of it ? But then this is not to be considered a sufficient manifestation of the testator's intention to defeat the husband of his marital rights. In the present case, the trustee was introduced in the first instance, and the use that is made of him in respect to the land and the goods, shews to demonstration almost, that the testator understood perfectly what he was doing, and what the law required on this subject; and that when he intended to give for the separate use of the wife, it was necessary in order to have his intention carried into effect with certainty, to declare *expressly*, that it was for her *sole* and *separate* use, but when he did not so intend, it was sufficient to omit these *exclusive* and *technical* words. And this deriliction of them, repels all presumption that might otherwise have arisen in favor of the wife's separate use, from the circumstance of giving it to the trustee.

Judgment for the plaintiffs.