## No. 8098.

STATE OF LOUISIANA vs. I. W. PATTON ET AL. STATE OF LOUISIANA EX REL. J. A. SHAKESPERE ET AL. vs. ISAAC W. PATTON ET AL. (CONSOLIDATED CASES.)

Articles 191 and 192 of the present Constitution are not self-operative.

The provisions of Act No. 7 of the Legislature of 1870 and of the laws amendatory thereof, for the election of the Mayor and Administrators of the City of New Orleans, are still in force.

The municipal election held in the City of New Orleans for the Mayor and Administrators thereof, on the second day of November, 1880, is legal and valid.

APPEAL from the Civil District Court, parish of Orleans. *Houston* J.

Miller, Finney & Miller, for the Relators and Appellees.

First—The laws in force when the Constitution of 1879 was adopted, provided for a municipal election in the city of New Orleans on the Tuesday after the first Monday of November, 1880. (See Acts

1870, Extra Sessions, p. 31, Sec. 4 ; Acts 1871, p. 145 ; Acts 1877, p. 89, Sec. 2).

Second—The Constitution continues in force all laws not inconsistent with it.  (Article 258).

Third—The law in force, which required an election to take place on the first Tuesday after the first Monday in November, was not inconsistent with article 262 of the Constitution, the object of which article was to direct an election in December, 1879, for the purpose, only, of obtaining the expression of the sense of the people on the adoption of the Constitution, and of an election of State officers to serve under that Constitution ; but the time of holding the municipal election in New Orleans was not changed, or even touched by that article, manifested plainly by its scope and purpose, and by the article 268, which expressly directs that in 1879 no municipal election shall be held in New Orleans.

Fourth—Nor is there any inconsistency between the laws in force, fixing city elections for the first Tuesday after the first Monday in November, and the provision in article 268 of the Constitution, " that the Legislature shall provide for an election in New Orleans during 1880." It required the new legislation to disturb the existing laws, and that contemplated new legislation *not* having been supplied, the legislation on the statute book when the Constitution was adopted, was necessarily maintained, and was in force when, in accordance with its provisions, the election in this city was held on the Tuesday after the first Monday.

Fifth—Still less can any inconsistency be deemed to exist between the laws in force, requiring an election in November, 1880, and articles 191, 192 of the Constitution, which fix municipal elections in New Orleans on the day of the general State elections, to be held on the third Monday in April, and which provide that municipal elections shall not occur oftener than once in four years—for it is clear the time of the first election in New Orleans is not touched by these articles, operative four years hence, and leaving the time of the *first* election under the complete dominion of the law in force when the Constitution was adopted, and not displaced by that instrument.

Sixth—The intention of the Convention must be sought by construing all the articles of the Constitution, on the same subject-matter, from which it plainly appears that an election for municipal offices in New Orleans was contemplated during the year 1880. It must be assumed that the Convention appreciated that elections would be brought about by the new legislation, *if* furnished ; or in the event of the failure of that new legislation, by the existing laws main-tained in force ; that construction which maintains the validity of

the election in November effectuates the plain intent of the Constitution, harmonizes the articles supposed to conflict, gives effect to the laws in force to fix the time for the first election, and maintains the articles of the Constitution as operative for the future—all the effect can be attributed to those articles consistent with the purpose and spirit of that instrument.

J. Ward Gurley, Jr., on the same side.

The construction and interpretation of constitutions is governed by the same rules and principles that are applicable to statutes.'

The Constitution of 1879 continued in force, for the year 1880, the existing laws relative to municipal elections in New Orleans, unless modified by the General Assembly.

By the existing laws the days for municipal elections did not depend upon the *event* of the general State election, but *both* events (the general and municipal election) were to take place on one and the same day, which day was definitely fixed "the first Tuesday after the first Monday in November."

The General Assembly, by its failure to modify those laws, adopted them, so far as they related to municipal elections, as effectually as if it had passed an affirmative statute designating the day.

Spencer & White and Thos. J. Semmes for Defendants and Appellants.

First—The authority of a statute fixing the time and manner of holding the election was essential to the validity of the election.

Second—The statute of 1871, which fixed the election biennally at the time for electing members of the General Assembly is no authority for an election held on the 2d of November, that day being neither biennial nor the day fixed for electing members of the General Assembly.

Third—If the terms of the Act of 1871 are to be construed as authorizing the municipal election on the day fixed for electing members of the General Assembly in 1871, without regard to subsequent constitutional modification, then Monday was the day, and the election on Tuesday was an absolute nullity.

Fourth—If the statute of 1871 did not fix inflexibly, as the day for the city elections, the day for general elections, as at that time provided by law, but contemplated following subsequent constitutional changes, then each and every change must be followed and the day fixed by the Constitution of 1879 must be adopted.

Fifth—The rule applies with increased significance with reference to the second section of the Act of 1877.

Sixth—The Legislature of 1877 had no constitutional power to fix the

time and place for electing members of the General Assembly, they were determined by express constitutional provision—hence, beyond the scope of legislative authority. The second section of the Act of 1877 was, therefore, a mere legislative enunciation of the constitutional day, without inherent validity, depending on the Constitution of 1868 for its merely declaratory existence, and of necessity ceased to be legally existant, when the Constitution of 1868 was expressly repealed.

Seventh—The third section of the Act of 1877 was a valid exercise of legislative authority—it was not, therefore, repealed by the repeal of the Constitution of 1868—and not being inconsistent with the Constitution of 1879, was in existence on the 2d day of November, and is fatal to the plaintiff's case.

Eighth—Concede that the Act of 1871 in terms fixed the election in November every two years, then it has been repealed by the Constitution of 1879.

Ninth—The Constitution of 1879 after fixing the first State election in December, 1879, and thereafter in April every four years, provides that the municipal election in New Orleans shall be held at the same time as the general State election, and not oftener than once in four years.

Tenth—Paraphrased, the provisions of the statute say : the municipal election in New Orleans shall be in November, and every two years ; and the Constitution, that such election *shall be in April, and every four years.*

Eleventh—The conflict is patent, the repeal express.

Twelfth—The provisions of Article 268 make it obvious that the Convention intended to make the provision of Article 192 at once operative.

Thirteenth—Art. 268 was rendered necessary, not only by the provisions of Arts. 191 and 192, but likewise in consequence of those of Arts. 253 and 262.

Fourteenth—To disregard the mandatory words *shall be in April* and substitute *shall* be in November, would be expunging the words of the Constitution, and be violative of every canon of construction.

Fifteenth—To disregard Article 268 would be a stultification of the Convention.

Sixteenth—There is no claim on the part of the defendants that the Constitution has prolonged their tenure for four years.

The opinion of the Court was delivered by

BERMUDEZ, C. J.   The question submitted for solution in the above consolidated cases simply is :

*Was the municipal election, held for Mayor and Administrators, in the City of New Orleans, on the second day of November, 1880, authorized by law?*

If it was, then the relators have been duly elected and must be inducted into office.

If it was not, then the defendants, as actual incumbents, are entitled to hold over until they be otherwise superseded in their functions.

It is rudimentary that the existence of a law, providing for the time and manner of holding such an election, is essentially necessary for its validity.

Hence, two questions present themselves :

1st. Was there any law in force when the Constitution of 1879 went into operation fixing a day for the holding of municipal elections in New Orleans? If there was such law, what was *that* day?

2d. Was that law abrogated, or that day changed by that Constitution?

If there was such law, and it fixed the 2d of November, 1880, and if it was not annulled or amended by the Constitution, then it was continued in existence, at least up to that time, and the election which took place on *that* day is not a nullity but is legal and valid.

If there was no such law, or if there being one, it fixed another day, or if the Constitution itself designated a different time from that on which the election was held, then that election is a nullity, is illegal and invalid.

A close scrutiny of the legislation on the subject now becomes necessary.

In 1870, the City of New Orleans, created in 1805, was reorganized. Under the provisions of Act 7 of that year (the present charter) the first mayor and administrators of the corporation were (sec. 4,) to be appointed by the executive and to continue in office until the first Monday in November, 1870, or until their successors were elected and qualified. On the same first Monday in November there was to be an election for mayor and three designated administrators, whose successors were to be elected every two years thereafter.

On the first Monday of November, 1871, there was to be an election for the remaining four designated administrators, whose successors were likewise to be elected every two years thereafter.

In 1871 this section 4 was amended by Act No. 48, the second section of which provides : That elections for mayor and the several administrators of the City of New Orleans shall be held *biennially*, "at the time of the election for members of the General Assembly."

This meant, under article 17 of the Constitution of 1868, which was

then in existence, " the first Monday in November, and every two years thereafter."

The amendment of section 4 of act 7 of 1870, by section 2d of act 48 of 1871, coupled with article 17 of the Constitution of 1868, which became a component part of it, then read substantially :

The election for mayor and administrators of the City of New Orleans shall be held *biennially* from 1870 on the first Monday of November.

In 1874 the Constitution of 1868 was amended, and the words, *"first Monday,"* found in article 17, were stricken out, and the words, *"first Tuesday after the first Monday,"* were substituted thereto, and became part of the article.

In 1877 (no doubt with a view to make the constitutional amendment more explicit and more extensively known), the Legislature passed Act No. 58, the second section of which provides that elections for representatives in the General Assembly shall be held on *"the first Tuesday after the first Monday in November,* 1878, and every two years thereafter."

So that it is patent that there was a law in being on the first of January, 1880, when the present Constitution was promulgated, providing for a day for the holding of the election of mayor and administrators of the City of New Orleans, and that day was the *first Tuesday after the first Monday of November*—that is, for the year 1880, *the 2d of November*, the day on which the election assailed was actually held, and on which the relators were actually elected.

There was passed since the 1st of January, 1880, no statute whatever on the subject.

It is, therefore, clear that, *unless* the law as it stood on the 1st of January, 1880, was abrogated or modified by the Constitution of 1879, it is still in force ; and, consequently, that the municipal election held on the 2d day of November, 1880, is legal and valid.

The State and the relators claim that the law was not affected, while the defendants insist that if the law existed, which is denied, it was annulled by the Constitution of 1879.

The existence of the law once established, the burden was upon the defendants to show its abrogation or change.

The Executive of the State having issued a proclamation under that law for the holding of a municipal election, the officers designated by law having held that election, the qualified citizens having voted at that election, and the returns being in favor of the relators, they, having been commissioned and have qualified as mayor and administrators of said city, would have at once entered upon the discharge of their respective

duties but for the defendants, who, as incumbents, continue in their functions, impeding and obstr eting their induction into office.

The contention is that articles 191 and 192 are obnoxious to the existence of *all* legislation (if any) in force at the adoption of the Constitution of 1879, fixing, for the holding of a municipal election in New Orleans, a day different from that appointed by the first article ; that the Constitution having provided that the general election shall take place on "the Tuesday next following the third Monday in April," and the act of 1871, as subsequently amended (if it exist), providing that municipal elections in New Orleans shall take place on the same day on which the State election was to be held, the election which took place on the second of November, 1880, not having been held on the day appointed for a general election, is a nullity, and is productive of no effect.

The argument underlying that theory is that, if the act of 1871 prescribed a day different from that designated in article 191, it was thereby abrogated, and that if it appointed the same day it was disregarded, and that, in either case, the election held on the 2d of November, 1880, *is a nullity*.

The fallacy of the proposition consists in the assumption that articles 191 and 192 became *at once operative* upon the adoption of the Constitution of 1879, which superseded instantly not only the Constitution of 1868, which it was intended to destroy and replace, but also *all laws* in conflict with its own provisions.

If it be true that these articles are the only ones in the Constitution on the subject of municipal elections in New Orleans, and that they went into immediate operation, at the adoption of the Constitution, the pretensions of the defendant would offer great plausibility ; but, is it true that these are the only articles on the subject, and that they became instantly operative?

They read as follows :

Article 191 : " Until otherwise provided by *law*, the general State election shall be held once in every four years, on the Tuesday next following the the third Monday in April."

Article 192 : " Parochial and the *municipal* elections in the Cities of *New Orleans* and Shreveport shall be held on the same day as the general State elections, and not oftener than once in four years."

We will now proceed to inquire into the object and meaning of the articles invoked, contrasted with others, *in pari materia*, and that being done, we will construe and expound them.

When the articles of a constitution are subjected to judicial analysis and criticism for exposition, courts of justice are to be guided by the rules which the wisdom of men has prudently established and cautiously applied in the interpretation of all instruments, whether of a

general or local, public or private character, whether intended to regulate the intercourse of nations, states, corporations or individuals among themselves.

The most important and salutary of these rules is, that the whole instrument must first be attentively surveyed, and that the purpose and intention of its authors must next be diligently searched, gathered and deduced from the entire context, so as to make all the parts appear and prove rational, harmonious, efficacious and uniformly conducive towards the practical accomplishment of the objects in view.

A general spirit necessarily pervades and animates the instrument. All matters pertaining to that spirit tenaciously adhere to it and should not be severed from it. All matters not strictly germane, but concordant, should be dealt with as auxiliary and subordinate to it. It matters little, or not at all, how irregularly its clauses may follow or precede one another. The important matter is that they be all well understood and, when comprehended, that they be harmoniously construed, and, if possible, made to co-operate consistently, uniformly and prospectively towards a common end. Seeming differences or contrarities should be reconciled ; vitality, power and effect should given to every clause, every article, every phrase, every word, every iota, which each and all have a particular, significant, determined import and object, so as, in preference, to maintain and enforce rather than nullify, paralyze and destroy. " To know the law is not to grasp its words, but its force and power." 9 A. 166 ; 13 A. 345 ; 4 R. 72 ; 3 M. 672 ; 31 A. 440 ; 32 A. 597 ; and authorities there cited. H. D. 264, 783.

There is no higher law, whether in the Constitution of the United States, which is intended, by delegated authority, to bind and protect all alike, or elsewhere, which requires that a State constitution shall be framed in an exceptional manner or form, or that the articles composing it shall be inserted or arranged in a special order. As long as such constitution upholds and promotes the ends of a republican government, and does not clash with the paramount law of the land, each and all the articles which it embodies are, and must be, as effective as if the State which it rules were a solitary, independent and recognized sovereignty.

When the members of the Convention assembled they had before them the lamentable condition of public affairs, as well of the State as of the parishes and municipal corporations within its limits.

The principal object which they contemplated, the main spirit which animated them, the controlling intention which impelled them, was the welfare of the people, and this they proposed to accomplish by a rupture, a divorce from the past whenever practicable, and the formation of an alliance with the future, fruitful of a new government, in the

parishes, in the cities, in the State, whenever feasable. Their thoughts were bent, their efforts combined, concentrated upon such wholesome results.

Indeed, they had specially before them the deplorable state of things in the city of New Orleans, which is the most important *State* functionary. They had before them the sacred rights and the legal obligations of the citizens, the appalling figure of the municipal debts and liabilities, the alarming depletion of a dilapidated treasury, the crushing depreciation of taxable property, a shameful extravagance of expenditures of public moneys, a scandalous exorbitance of salaries, and, in presence of these calamities, they resolved to create and apply, as far as practicable, effectual relief and adequate remedies.

Hence it is, that by article 253 the Constitution has guarded against an unjust legislative invasion and suppression of the rights of the citizens to a choice of the officers designated; that by article 254 it directed the General Assembly at its next session, after the adoption of the Constitution, to enact proper legislation to liquidate the city indebtedness and apply the corporate assets to the satisfaction thereof, delegating authority to cancel the charter of the city, and remit its inhabitants to another form of government, if necessary; no salary then to exceed $3500; that by article 203 taxation was to continue equal and uniform, and by article 209 was to be limited; that by article 268 the General Assembly was required to provide for a municipal election *in 1880* in the city of New Orleans, or such municipal corporations as may be created within the territorial limits of the parish of Orleans during that year, provision being made thereby, at the same time, for a municipal election in the city of Shreveport, eventually, before April, 1884.

The Convention anticipated and assumed, as an accomplished fact, that the Legislature would carry out their directions and provide for a *new* government for the city of New Orleans, and for the *election* of officers receiving reduced salaries. The fact is, however, that the General Assembly, towards the very close of its session, passed a bill intended to further those directions, but that the executive, for considerations which command themselves to the respect of all well-meaning citizens, considering that the measure was not calculated to execute those directions, abstained, in the exercise of a discretion vested by the Constitution, from approving it. The consequence has been that, at the adjournment of the Legislature, there existed *no* general legislation for the fulfillment of those directions, and, as a necessity, the previous condition of things has continued in operation as effectually as if the Constitution had proved altogether reticent in relation to the citizens, and to the affairs of the city of New Orleans.

We have searched in vain for any *direct* constitutional provision,

and none was pointed out to us, prohibiting the holding of a municipal election in the city of New Orleans on the second of November, 1880. We have found, however, the first part of article 268, which forbids such election in December, 1879, but it has no present bearing upon the case, as the election assailed did not occur during *that month*. There being no formal or express abrogation or amendment, does any such exist by implication?

By articles 191 and 192 the Constitution directed that municipal elections in New Orleans must be held not oftener than once in every four years, on the Tuesday next following the third Monday in April, until otherwise provided by law; that being the day fixed for general State elections, and the Constitution so directed, *contingent* upon such general State election actually taking place.

The first general State election was not held on that day owing to article 262, which expressly dispenses with it *hac vice*, by providing that such election should take place on the first Tuesday in December, 1879, and the first municipal election in New Orleans was not held on this last mentioned day because of the positive prohibition forbidding it and which is contained in article 268.

The contingency of the actuality of both a general and of a municipal election in New Orleans on the same day under the present Constitution has not yet arrived, for the reason that the provisions relative thereto, and which were not intended to go *then* into effect, had remained and continued in suspense until April, 1884, or such other day as the Legislature may designate under article 191.

The term of service of the State officers chosen in December, 1879, was by article 265 to terminate as if they had been elected in April, 1880. They were thereby subjected to the operation of article 191 providing for an election in April. Article 268 having forbidden a municipal election in New Orleans in December, 1879, articles 191 and 192 did not bring such municipal election within their operation, and necessarily left them within the purview of the law in existence on that subject on the 1st of January, 1880, when the present Constitution was promulgated. The reason for which an election was authorized in 1880 was the expectation that the Legislature would give a charter to the city. As they did not do it, the whole law remained inoperative.

The convention did not intend that articles 191 and 192 should become *instantly* operative as to the City of New Orleans, as it emphatically provided by article 268 that the municipal election should not take place in December, 1879, but in 1880, on such day as the Legislature would appoint. The convention intended that those articles should control and affect, not the laws in force at the adoption of the Constitution, relative to municipal elections in New Orleans, but only such legislation

which by article 254 it directed the General Assembly to enact and the municipal elections to be provided for by that body under the direction of article 259.

It was necessary that the Legislature should by statute have altered the laws in existence to change the day fixed for municipal elections in New Orleans. As the Legislature was not in any manner disturbed by those laws they remained unimpaired and were in full force and vigor when the election was held on the Tuesday after the first Monday in November.

Constitutions, like statutes, are to be construed by the same rules of interpretation.

Sedgwick on Constr. 19, 95, 161 ; Cooley, Const. Lim. 63 ; 10 Ohio N. S. 588 ; 3 Ind. 251 ; 21 N. Y. 12 ; Wade on Retroact. 1. 8, 289, 290, 325, 326 ; R. C. C. 1723, 1946 ; D. 1. L. 3 T. 1. 26, 28 ; 10 M. 172, 560 ; 12 M. 697 ; 1 N. S. 161 ; 2 N. S. 33 ; 3 N. S. 190 ; 5 N. S. 527, 575 ; 6 L. 135 ; 7 L. 166 ; 4 R. 71 ; 1 A. 54 ; 2 A. 919 ; 3 A. 398 ; 5 A. 121, 395 ; 6 A. 605 ; 12 A. 805, 498.

The clear intention of the convention was that the charter of the city should be canceled or remodeled ; that its affairs should be liquidated and settled ; that the government *in esse* should cease ; that a new city government should be organized and, under *all and any circumstances*, that there should be a municipal election in New Orleans in 1880, and that the officers to be entrusted with the administration of corporate affairs should be then elected for the purposes of such *new* government and should thereupon enter into office. It was not before then that these articles were to be operative. Until the happening of those events, those articles were to be and, owing to the non-occurrence of the same, they have remained and have continued to be dormant up to the present time.

It hence follows, that inasmuch as the law fixing the first Tuesday after the first Monday in November, as the *day* for a municipal election in New Orleans, was unimpaired on the second of November, 1880, which was *that day*, the election then held, took place on the day appointed by law, and is, therefore, legal and valid.

*Furthermore :* It cannot for an instant be supposed that the framers of the Constitution knew not that there were laws in force while they were deliberating on the spirit and substance, on the letter and form of the organic law, and that those laws were and would continue to be consistent or inconsistent with the result of their labors; that they intended to override or nullify all of them instantly and to provide for a new system of legislation which was to be immediately self-operative upon the adoption of the Constitution, regardless of the state of things in existence or of consequences.

It is glaringly potent that their intention was to the very reverse, for they distinctly provided by articles 253 and 259 that *all laws,* whether *consistent or inconsistent,* would continue in force, the former indefinitely, until changed ; the latter, as if the Constitution had not been adopted, but only until the organization of the new government, which the Constitution proposed to establish, and the induction into office of the new officers to be appointed or elected under that government and no longer.

It is to be remarked, that in article 259 the word *State* is not prefixed to the words, " government" and "officers," which appear to have been used in their broadest and most comprehensive sense, and the inference is that the article in that respect was intended to bring within its fold as well the *State* government, offices and officers, as the parochial and municipal governments, offices and officers, the *officers* being considered *of*, because *in*, the State, and that all restrictive sense was intentionally avoided. This conclusion is the more apparent, when it is considered that the convention intended to provide, and did actually provide, by the Constitution, for the organization of such new government, not only for *State* but also for *parochial and municipal* purposes whenever needed and practicable.

The law fixing the first Tuesday after the first Monday of November as the day on which municipal elections were to be held biennially, from November, 1870, in the city of New Orleans, whether consistent or inconsistent with the Constitution, was, therefore, in force on January 1st, 1880. If it was consistent, there can be no dispute that it continued in existence. If it was inconsistent, it also remained in force, because the two events which, under article 259, would have ended its life had not arrived :

1st. The city government which the convention expected the General Assembly to organize, in furtherance of the mandate contained in article 268, was not provided for by legislation ; and

2d. The new officers to be elected for the purposes of such new government were not, and could not, have been elected and inducted into office.

If it be true that articles 191 and 192 were intended, under all contingencies, to become at once operative, then the law in existence on the 1st of January, 1880, fixing a day for the municipal elections in New Orleans different from that named in article 191, was abrogated the moment the Constitution went into operation ; then, in the absence of the legislation directed by article 253, the following article 254, which gives to the citizens of New Orleans the right of choosing their officers, has become a dead letter ; then article 268, which provides for a municipal election in that city, is nullified ; then the city charter, with all its

defects and enormities, is fastened upon the corporation and its inhabitants without the hope of forthcoming remedy; then, whether the incumbents hold over, or, owing to the expiration of their terms, be replaced by the executive, under article 69, the exorbitant salary attaching to the offices which they claim, continue to be paid, at least until 1884; then the Legislature is shackled, is powerless to afford any provisional or immediate relief by a change of municipal officers; then the Executive by proclamation, the citizens by their vote, on November 2d, 1880, have taken that to be a law, which was a lifeless form, which was a fleeting shadow; then constitutional requirements are baffled. Such surely was not the intent or meaning of the convention. Before the recognition of such a policy in the Constitution, the judicial mind must recede.

It is manifest that, whether the law in question was consistent or inconsistent with the Constitution it was altered or abrogated neither by the Constitution at its adoption nor by any subsequent legislation; that it was the law in force, fixing as the day for a municipal election in New Orleans the 2d of November, 1880, on which the election assailed took place, and that said election having been held on the day appointed by law, was legally held, and is therefore unquestionably valid and effective.

The law does not favor repeals by implication. So that it is not correct to say that the convention intended to make articles 191 and 192 at once operative, and that they actually so became.

To sanction the theories advanced by the defense in this case, would be to tear away and absolutely expunge from the Constitution and completely destroy some of its most wholesome and vital provisions, which should be respected and enforced, and incorporate in their place antirepublican, un-American, unjust, oppressive and odious clauses which were avowedly excluded from it; would be to vivify that which was lifeless, to deaden that which was quick in being; would be to transgress and violate every canon of interpretation, to stultify the wise delegates of the people in convention assembled, to arrogate to ourselves the power and might of judicial legislation by substituting irrational utopias to the solemn behests of the convention—consequences before which we stand aghast, and which, in duty bound, we absolutely decline to solemnize and consecrate.

, Construing, as we do, the Constitution of 1879, we make all its provisions under consideration appear rational, logical, concordant, efficacious and conducive to the judicial fulfillment of the important objects which its framers had in contemplation, and we leave the General Assembly unfettered and free under the organic law to legislate whenever, wherever and however they may deem advisable and proper—specially

in furtherance of the directions of the Constitution to which we have alluded, and particularly as regards the holding of a municipal election in New Orleans, although the year 1880, within which the same was expected to be ordered and held, will have elapsed when they convene again.

In consequence of the views which we hold and announce, the municipal officers elected on the 2d of November last, are enabled at once to enter upon the execution of their mandate ; a new administration is inaugurated and laws heretofore in existence continue in force until repealed or amended by the Legislature.

The judgment of the lower court was in favor of the relators. It has made a sound exposition and application of the law, and so has done justice.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court, in the above consolidated cases, be affirmed at the costs of the appellants in both courts.