## NORRIS v. BRADFORD.

1. When a slave is loaned by a father to his son, the mere possession of the slave, although it may have induced a credit to be given to the son, will not subject the slave to the payment of his debts.

2. Whenever a contest arises between a creditor or purchaser of a bailee and one claiming to be the ower, the question of fraud is involved—and when property is loaned by a father to a son, for an indefinite period, and for no specific object, it is competent for a jury to infer either that a gift was intended, or that there was a fraudulent intention to deceive creditors.

3. A loan is not an incumbrance within the meaning of the first section of the act of 1823. [Aik. Dig. 207, §4.]

WRIT of error to the Circuit Court of Talladega county.

Trover, for the value of a negro slave. At the trial, a witness, who was the son of the plaintiff, testified that the slave was loaned to him by his father, as a nurse. The witness had possession of the slave for several years previous to his removal from South Carolina, where he formerly resided, to this State—this possession was not uninterrupted, but, during that period, the slave was frequently in possession of the plaintiff, on a visit. The witness removed his family to this State in the spring or summer of 1838, without the knowledge of the plaintiff, and the slave came with him without the consent of the plaintiff. The slave remained in the possession of the witness, under the loan, until she was levid on at the suit of some of his creditors, in the fall of 1839, and was afterwards sold by virtue of an execution, to satisfy debts contracted by the witness. The witness neither disclosed nor concealed the fact that the slave was the property of the plaintiff, when he came to reside in this State, or afterwards, up to the period of the sale. On the day of the sale, and immediately before it was made, an agent of the plaintiff gave notice publicly, to all the bystanders, that the slave was his property, and forewarned all persons from purchasing, as suit would be instituted against the purchaser. The defendent became the purchaser.

On this state of facts, the Court charged the jury that if they

believed the slave was in the possession of the witness when he came into the State and was retained by him to the time of the levy, and that the witness had obtained credit upon the faith of his possession of the slave, then the title acquired by the defendant under his purchase, was good, and they ought to find for the defendant. The plaintiff excepted to this charge, and a verdict having been returned in accordance with it, judgment was thereupon given—to reverse which he prosecutes his writ of error, and here assigns that the Circuit Court erred in its charge.

PARSONS, for the plaintiff in error.
CHILTON, contra.

GOLDTHWAITE, J.—1. We think the instruction of the Circuit Court to the jury placed this case on a defective principle, and therefore the judgment cannot be sustained, although it is very possible the verdict would have been the same if the proper charge had been given.

The charge assumes that the mere possession of the slave, if it induced a credit to be given to its possessor, is sufficient to subject it to his debts. All bailments would be exceedingly hazardous if such were the law, because there is no class of them which affords any certain means by which a stranger can ascertain in whom the right of property is vested. It is this uncertainty which most probably has induced much of the legislation with respect to frauds, and the limitation of actions for the recovery of personal chattels.

By the common law, possession in all cases, is *prima facie* evidence of the ownership of a personal chattel, and in some, in order to prevent the commission of frauds, this legal intendment is not permitted to be rebutted—but a loan has never been considered as belonging to this latter class. Our statute of frauds has very wisely provided a fixed and definite rule to prevent the resumption of a pretended loan to the prejudice of a creditor or purchaser, after the lapse of three years, and until that period of time has elapsed, the case of a loan is to be determined by the rules of the common law.

2. We apprehend it is universally true, whenever the contest is between the creditor of a bailee, or a purchaser from

him, and one claiming to be the owner, that the question of fraud is involved—for no one ought to permit another to control his property in such a manner as must necessarily lead to erroneous impressions. In the present case, the facts in evidence did not warrant the Court in determining that the plaintiff was not entitled to recover. If the transaction was *bona fide* a loan, it is very clear that the plaintiff's title was not divested, even if his bailee had obtained a credit on account of his possession of the slave. On the other hand it is equally clear, if the pretence of a loan was merely colorable, and made in order to shield the property from the consequences of mismanagement on the part of the son, and was never intended to be resumed, except in such an event, the law will pronounce it a gift, but in either case the question is one of fact for the determination of a jury. [Shacklett v. Kershner, 1 Lit. 226.]

When a loan is made by a parent to a child for an indefinite period, and for no specific object, it certainly would be competent for a jury to infer, that although it might thus be denominated by the parties, in reality it was intended as a gift—or that it was only intended to be resumed in the event there was danger of its passing from the child to a creditor. In the first case the title would be absolute, and in the last a fraud would be contemplated—and in both the property would pass to a creditor or purchaser. [Fitzhugh v. Anderson, 2 H. & M. 280.]

3. It has been supposed by the defendant's counsel that this case may be considered as within the first section of the act of 1823, [Aikins Digest, 207, §4,] but the interest of a lender is certainly not within the meaning of the term *incumbrance*, as used in that statute. Independent of this the precise matter was before the enactment of 1823, covered by the general statute of frauds, which declares that the property shall be deemed to be with the possession, in every case of a pretended loan after a possession of three years. [Aikin's Digest, 207, §3.]

Let the judgment be reversed and the case remanded.