## GOULD vs. HILL, by next friend, &c.

1. The words, "exclusively to her and the heirs of her body forever," when used in a bequest of slaves by a father to his daughter, then a married woman, are sufficient to exclude the marital rights of the husband.

2. A court of equity will entertain a bill filed by a married woman, and protect her in the enjoyment of her separate estate in slaves, when they have been levied on under attachment at the instance of a creditor of the husband, and, judgment having been rendered, have been demanded by the sheriff of the husband, by whom they were replevied, for the purpose of selling them under the execution.

Error to the Chancery Court of Mobile. Tried before the the Hon. J. W. Lesesne.

The bill in this case was filed by the defendant against the plaintiff in error, for the purpose of restraining from selling certain slaves, alleged in the bill to be her separate property, under an execution against James N. Hill, her husband. The facts of the case will be sufficiently understood from the opinion of the court. The chancellor granted the relief prayed, and his decree is now assigned as error.

W. G. Jones, for the plaintiff in error.

Smith, for the defendant.

DARGAN, C. J.—Whether the complainant has shown any right to the slaves in controversy depends on the construction of the will of Jordan Anderson, her father, the fifth clause of which is in the following language: " My will is, that my daughter, Mary, have a negro girl named Mary, *exclusively* to her and the heirs of her body for ever." At the time of the execution of this will the complainant was a married woman, and the question is whether the complainant took a separate estate in the slave, or whether she became the property of the husband. There is, it is true, much conflict in the decisions in regard to the words that will create a separate estate in favor of a married woman, and it has been well remarked by counsel, that this conflict in the decisions of courts arises in consequence of two

general rules of law;—first, that no precise words are necessary to create a separate estate, but if the intention of the testator or donor be clear that the property was intended for the separate use of the wife, then the marital rights of the husband will not attach upon it—secondly, the law favors the rights of the husband, and before they can be excluded, it must plainly appear that such was the intention of the donor or testator. These two general rules, although entirely consistent with each other, have produced the conflict of decisions; for what will be considered plain and manifest by one, not unfrequently will be considered doubtful or uncertain by another, and thus different courts, governed by the same general rules, come to different conclusions. Yet we have but one guide, and that is, the intention of the testator or donor. When we ascertain his intention, the law is ascertained. What then was the intention of the testator? He says, my will is that my daughter, Mary, have a *negro girl named Mary, exclusively*, to herself and the heirs of her body. Exclusive of whom? Did he mean of his other legatees? Then the word has no legal effect whatever, for had it been omitted, all others except the husband would have been excluded from all interest in the slave. We can only give it effect by holding that the testator intended to exclude the interest of the husband, and this we think the correct construction of the will. The gift is to the complainant, *exclusively*. To make it such, the rights of the husband must be excluded. In the case of Margetts v. Barringer, 7 Sim. 482, the testator gave his residuary estate to his two daughters, share and share alike, for their own use and benefit, independent of any other person. The vice-chancellor said, that the words, independent of any other person, meant independent of all mankind, and therefore excluded the husband. So, in the case of Newman v. James, 12 Ala. 31, this court held that property conveyed by deed to a married woman, " to her and to her heirs, to have and to hold the same to and for her use, benefit and right, and of her heirs, without let, hindrance, or molestation whatsoever, was free from the marital rights of the husband." Now I think the language of the testator, in the case before us, is much stronger to show that he did not intend that the husband should take, than in the cases we have just cited; for, if the testator intended that his daughter, who was then a married woman, should take exclu-

sively, he necessarily must have intended that her husband should not; and by no rule of construction can we say that he did not intend his daughter should take the property exclusively to herself, when in plain language the testator declares such to be his will. Nor is there anything in the case of Pollard v. Merrill & Exemer, 15 Ala. 169, that militates against the view we have taken. The principle recognised in that case is this, that where property is conveyed to the joint use of husband and wife, the husband will take the whole to the exclusion of the wife; and the court there admitted that the intention of the donor was to govern, in ascertaining whether the wife took a separate estate, and that this intention did not depend on the use of any particular words, but if it plainly appeared from the language of the donor that he intended to create a separate estate in the wife and to exclude the rights of the husband, that his intention should prevail. Here the intention is apparent. We cannot doubt as to what the intention was, and we think the chancellor did not err in decreeing the slaves to be the separate property of the complainant.

2. But it is urged that there was no necessity for filing this bill; that it does not appear from the proof that the defendant intended to levy on the slaves as the property of the husband, and therefore the bill should be dismissed. We cannot agree with the plaintiff's counsel. The facts disclosed by the proof in this cause, in our opinion, fully authorise the complainant to come into this court, for the purpose of protecting her rights. The defendant had caused an attachment to be levied on the slaves as the property of her husband, who had executed a bond to replevy the same. After judgment had been rendered on the attachment, the slaves were demanded by the sheriff. These facts within themselves fully authorise the complainant to come into this court to have her rights ascertained and protected.

Let the decree of the chancellor be affirmed.