## MITCHELL, ADM'R, vs. GATES.

1.  The rule now well settled in relation to ante-nuptial deeds is this: that to prevent the husband's marital rights from attaching to the wife's personal chattels, the deed itself must show a clear and plain intention to exclude them.
2.  A deed executed by a feme sole the day before her marriage with an insolvent man, conveying all her property real and personal to a trustee, in trust that he "shall permit her to remain in quiet and peaceable possession" of the same, " and take the profits thereof to her own use, and the increase, interest and income thereof to her own use and benefit during her natural life, and at her decease to descend and go to her heirs absolutely forever," does not exclude the husband's marital rights.
3.  The condition of the parties at the time the deed was made is admissible evidence, but the acts and declarations of the husband after marriage cannot be received to show the true construction of the deed.

ERROR to the Circuit Court of Franklin.

Tried before the Hon. THOMAS A. WALKER.

DETINUE by Reuben Mitchell, the plaintiff in error, as administrator of Philip Gates, deceased, against Valentine Gates, the defendant in error, for certain slaves.

The defendant relied on a purchase from the wife of said Philip Gates, made after her marriage, she claiming a separate estate in them under the following deed, made by herself:

" This indenture, made this 22nd day of January, 1825, between Margaret Henley of the first part and Elijah Henley of the second part, witnesseth : That, for and in consideration of the sum of one dollar to the said Margaret Henley in hand paid, the receipt whereof is hereby acknowledged, the said party of

the first part hath given, granted, bargained, sold, aliened and confirmed, and by these presents doth give, grant, bargain, sell, alien and confirm to the said Elijah Henley of the second part, his heirs and assigns forever," (here follows a description of the property conveyed, consisting of a certain tract of land, several negroes and other personal property,) " the property of and belonging to said Margaret Henley of the first part: To have and to hold the said hereby granted or intended to be granted premises, and tract or parcel of land, with its appurtenances, and together with the aforesaid slaves and future increase of the females thereof, and all the other personal property hereby conveyed, unto the said Elijah Henley, his heirs, executors, administrators and assigns forever; and the said Margaret Henley, for herself, her heirs, executors, administrators and assigns, doth hereby covenant, promise and agree, to and with the said Elijah Henley, his heirs, executors, administrators and assigns forever, in manner and form following, that is to say, that the said Margaret Henley, her heirs, executors, administrators and assigns, the aforesaid tract or parcel of land and premises, with their appurtenances, together with the aforesaid slaves and the future increase thereof, and all the personal property hereby conveyed, unto the said Elijah Henley, his heirs, executors, administrators and assigns, against all persons whatsoever, shall and will forever warrant and defend by these presents; upon trust, nevertheless, that the said Elijah Henley, his heirs, executors, administrators and assigns, shall permit the said Margaret Henley to remain in quiet and peaceable possession of the said tract or parcel of land and premises, and its appurtenances, together with the aforesaid slaves and other personal property hereby conveyed, and take the profits thereof to her own use, and the increase, interest and income thereof to her own use and benefit during her natural life, and that at the decease of the said Margaret to descend and go to her heirs absolutely forever.

"In witness whereof the parties to these presents have hereunto set their hands," &c.

" In connection with this deed, and as tending to show that a separate estate in the slaves sued for, who were descendants of the slaves conveyed, to the said Margaret, not subject to the marital rights of her husband, the intestate of the plaintiff, the defendant introduced evidence that the said deed, so made

by the said Margaret to the said Elijah Henley, was executed on the day before the marriage of the said Philip with the said Margaret, and with his knowledge and assent ; to the introduction of which evidence, for the purpose aforesaid, the plaintiff objected, but the court overruled the objection, and permitted the same to go to the jury ; and therefore the plaintiff excepts.

"Defendant also adduced in evidence before the jury, by witnesses sworn and examined, that Philip Gates was insolvent before and after his said marriage with the said Margaret, and that he often and always spoke of the said slaves, and the increase of said slaves, as his wife's separate estate, and said often, whilst said slaves were on the farm where said Philip lived, they were hers and not his. It was also proved that said Philip lived and died on the land of Young Henley, the son of said Margaret, and that said Margaret survived her husband. To this proof the plaintiff objected ; but the court overruled his objection, and allowed it to go to the jury, in connection with the deed, and plaintiff excepted.

"After the case was closed, and had been argued to the jury by the counsel, the plaintiff asked the court to charge the jury, that the said deed from the said Margaret to the said Elijah Henley did not create a separate estate in the said Margaret in the slaves mentioned therein, so as to defeat the marital rights of her husband, the said Philip Gates, after his marriage with the said Margaret. This charge the court refused to give, but charged the jury that said deed, when connected with proof of the fact that said deed was executed the day before the marriage of the said Margaret with the said Philip, did invest said Margaret with a separate estate in said slaves named in said deed, and in the descendants of said slaves ; and that the said slaves remained the separate property of the said Margaret, notwithstanding her said marriage with said Philip, and discharged from his marital rights ; and that the jury might look to the evidence of said Gates' admissions, to show the nature of the possession of said slaves, made while said slaves were in his possession. To the refusal of the court to charge as requested, and to the charge given, the plaintiff excepted."

The above rulings of the court to which exceptions were taken are now assigned for error.

Mitchell, adm'r, v. Gates.

L. P. & R. W. WALKER, for plaintiff in error:

The question here is one of *construction* simply; the deed is valid or void according to the significancy of its own words, and not otherwise.

According to the principles of the common law, the husband and wife are regarded as one person, and her legal existence is suspended during the continuance of the coverture. From this principle it results that, at law, no contracts can be made between husband and wife; they are mere nullities. Yet, if these admissions are to be received as binding on Gates, they establish a contract between Gates and his wife, after coverture, which is made to affect his title to property acquired by the marriage.

Again; the admissions of Gates were made to have an effect which would not have resulted from a deed executed by him during coverture, conveying this property to his wife in the language of his admissions. Such a deed does not divest the estate of the husband in a court of law.—11 Ala. 966. As to the admissions, see 15 Ala. 373.

2. The deed from Margaret Henley to Elijah Henley, made before her marriage with the plaintiff's intestate, did not create a separate estate in the wife, and the property having gone into the possession of her husband, became his and liable to his debts. Lenoir v. Raney, 15 Ala. 667; Machen v. Machen, 15 Ala. 373; Pollard v. Merrill, 15 Ala. 169; 12 Ala. 49, 630; 17 Ala. 637.

It must appear that it was the intention of the parties to secure the property to the use of the wife, in such a mode as to be inconsistent with the enjoyment by the husband, or with the exercise of dominion over it by him.—Cook v. Kennerly, 12 Ala. 42, 46; Newman v. James & Newman, 12 Ala. 32.

In the case from 12 Ala. 32, *supra*, the words "for her use, benefit and right," standing alone, were not held to be sufficient to create a separate estate; but when it was added, "without let, hindrance or molestation whatever," these words were held to indicate a clear intention to create a separate estate.

The intent to exclude the marital rights of the husband, must be evinced by the language employed in the creation of the estate; and no matter what the surrounding circumstances may be, they will not be sufficient to establish the intent in

53

the absence of language, evincing the intent, in the creation of the estate.—12 Ala. 47, 635.

The only question now is, whether the words in this deed are sufficient to show that the grantor meant to reserve to herself a separate estate, independent of the husband.—Lee v. Preaux, 3 Bro. Ch. 387, cited and approved in 12 Ala. 634 ; 12 Ala. 174; 15 Ala. 174. Does it appear unequivocally on the face of the instrument, that the intention was to exclude the husband from any interference with the property conveyed?—12 Ala. 635 ; 15 Ala. 174.

In Pollard et al. v. Merrill & Eximer, 15 Ala. 174, this court say, unless by the terms of the deed the husband is excluded by the creation of a separate estate, the property is subject to his debts, notwithstanding the provision in the deed expressly to the contrary. This is certainly a much stronger case than the mere parol declarations of the husband, made after the execution of the deed, that the property was not his but his wife's.

The husband, having the possession, is entitled to all the rights in the property secured by the deed to the wife, and as the limitation over could not take effect, the absolute proprietorship in the property vested in the husband.—15 Ala. 669 (670.)

The intervention of a trustee in whom the legal title is vested makes no difference.—15 Ala. 174, 666 ; 19 Ala. 148. The case of Strong et al. v. Gregory, 19 Ala. 146, does not conflict with the plaintiff's rights in this case.

That was the case of an ante-nuptial contract, by which it was agreed that after the marriage the property of the wife should be settled and secured by conveyance, upon a trustee for the use and behoof of the wife.

In that case, this court say, that the same words are not to receive the same construction in every instrument, or, rather, the same intention is not always evinced in every instrument by the use of the same words.—(149.)

And the court say further, that if property be conveyed to a trustee for the use of a married woman, the marital rights of the husband will not be excluded, because it does not appear (from such language) that such was the intention of the grantor. But the decision in that case is placed upon the ground that the husband and wife, before marriage, stipulated that, after the marriage, they would settle the property on a trustee, for the use .

and behoof of the wife. And the court ask the question, if it were not intended that the wife should take a separate estate, why settle one part on the trustee for the use of the husband, and another part for the use of the wife?—(149.)

And the court further say (150) that, if the husband had the power of disposition of the whole for his benefit, such a power would be inconsistent with a separate estate in the wife.

Under this deed, upon the marriage, Gates certainly had the "power of disposition of the whole property."

WILLIAM COOPER, contra :

It is insisted on the part of the defendant that a separate estate was secured to the wife, and that the decisions of this court settle the rule, that, if the intent of the parties can be obtained from the contract, however informal and clumsy the instrument may be, this court will sustain the intent. The following decisions of this court are relied on: Newman v. James, 12 Ala. 29, where the words, " to have and to hold to her and her heirs, to and for her use, benefit and right, and her heirs, without let, hindrance or molestation whatever," were held to create a separate estate in a feme covert; Brown v. Johnson, 17 Ala. 232, where the words were, " to her and her heirs after her, free from the claim or claims of any manner of persons whatever, absolutely, as their own property, as if they had bought them ; Williams v. Maull, 20 Ala. 721, where the bequest was to the testator's daughter, "to be held in trust for her," &c. "and the labor and increase shall not be subject to her present or future husband's debts," and it was held to create a separate estate as against the husband and his personal representative ; Strong v. Gregory, 19 Ala. 146, where an ante-nuptial contract that certain property, after marriage, should be conveyed to a truste? for the use of the wife, was held to mean her separate use ; Lucas v. Kernodle, 2 Ala. 199, where a father, by deed, conveyed property to a trustee " for the use of his daughter, the hire to be paid to her, and at her death to go to her children," and it was held to create a separate estate ; Gould v. Hill, 18 Ala. 84, where the gift was to a married woman, " exclusively to her," and it was ruled to be a separate estate. These cases all show that the court will be governed by the general context and terms of the deed, and if it shows that a separate estate

Mitchell, adm'r, v. Gates.

was intended, the court will carry out and give effect to that intention. Now, what was the object of Margaret Henley's conveying her own estate to a trustee, to hold it that she might have it, and the issues and profits thereof, to her own use? And why did her intended husband assent to it? And why was it made the day before her marriage? She held the property before the deed; and if she was to hold it afterwards as she did before, then it was not good nonsense to make it.

In addition to the authorities above cited from our own decisions, there are many English cases to the same point.—See Pritchard v. Ames, 1 Term R. 222, where the words were, to have and to hold "for her own use and her own disposal;" Tyrrell v. Hope, 2 Atk. 558, where the words were "she shall enjoy the issues and profits;" 1 White & Tudor's Leading Cases 324; Staunton v. Hall, 2 Russ. & Myl. 180, "to be delivered to her demand;" 2 Coxe 414, "a gift to her use;" Jacob v. Amyatt, 1 Madd. 370, "to her own use and benefit;" 4 Madd. 409; Jones v. Lockhart, 3 Brown's C. C. 383; Roberts v. Spicer, 5 Madd. 491; Kensington v. Dolland, 2 Myl. & K. 184; Tyler v. Lake, 4 Sim. 144, or 2 Russ. & M. 183, where the words were "for her own use and benefit;" 2 Hare 49, where the words were "to her own use and benefit." In all these cases, the words were held to create separate estates in married women, though the technical term, "for her sole and separate use," was not used in any of them.

There are also many American cases of like purport.—Steel v. Steel, 1 Iredell's Eq. R. 452, which was a bequest to a married woman "for her own use," and was held to create a separate estate in her; 6 Serg. & Rawle 466, which was a devise to a married woman, "for her and her family use, for her life"; 5 Barr 385, "for the entire use, benefit, profit and advantage" of a married woman; Heathman v. Hall, 3 Iredell's Eq. R. 414; Hamilton v. Bishop, 8 Yerger 33, 40; Bridges v. Wood, 4 Dana 610, where the gift was to a *feme covert*, "and to her disposal, and to her and her heirs forever"; Warren v. Haley, 1 Sm. & Mar. Ch. 647, where the gift was to a trustee, "for the proper use and benefit of a *feme covert* and her heirs."— All these cases fully maintain the rights of married women, and the true reason is given in all of them, to-wit: that here, as in other cases, the intention of the party is the rule of con-

struction, when it can be attained without violating any rule of law.

Evidence of the condition of the parties at the time the deed was executed, and the objects they had in view, was properly received.—Strong v. Gregory, 19 Ala. 146.

The declarations and admissions of the husband after marriage, while the slaves were in the possession of him and his wife, were competent to show the nature of the possession, and that he did not hold as owner.—DeGraffenreid v. Thomas, 14 Ala. 681 ; Hall v. Stone, 14 Ala. 803 ; Nelson v. Iverson, 19 Ala. 95 ; Inge v. Murphy, 10 Ala. 885 ; Williams v. Maull, 20 Ala. 721.

It is further insisted, that, whenever a court of equity would construe a contract as creating a separate estate, a court of law will give the same relief.—2 Roper on Husband and Wife 168 ; 3 Term R. 620 ; 16 Ala. 486. And restraints on the forms of the disposition of the property only continue while she is *covert*, and are removed by her becoming single.—1 White & Tudor's Eq. Cas. 367 ; Newton v. Reid, 1 Sim. 141 ; Brown v. Pococke, 5 Sim. 663 ; Woodmeister v. Walker, 2 Russ. & M. 207 ; Tullitt v. Armstrong, 1 Beavan 1.

The existence of the trustee does not prevent the legal control of the same by the usee, if the deed permits the latter to hold possession ; and an execution at law can be levied on it for the usee's debts, notwithstanding the deed of trust.—Kennerly & Smith v. Cook, 12 Ala. 42 ; Clark & Co. v. Windham, 12 Ala. 801 ; 7 Ala. 82.

PHELAN, J.—The main question to be decided here relates to the true construction of this deed in trust, made by Margaret Henley to Elijah Henley, the day before her marriage with Philip Gates.

The rule now well settled in relation to all such deeds, is this, that to exclude the right of the husband from attaching to the personal chattels of the wife, which is and always has been considered a right upon which the law looks with favor, the deed itself must show a clear and plain intention to that effect. The law makes one rule, conceived to be a good one ; now, by that same law, a single woman, or her friends and advisers, may make a law for themselves, a law for her particular case, which

shall set aside and annul, to that extent, the general law of the land. It is, then, insisted, that this shall be done in such manner as to make that purpose plain. The husband is by force of circumstances not an actor here. He stands upon his rights, his general legal rights, which the other party in the exercise of a legal right is supposed to be desirous to take away from him.— He relinquishes nothing ; the other party only determines that she will exercise the power conferred on her by law while sole, of taking certain prospective rights from him to herself. There can be no sounder or better principle then, to govern in such a case, than to say the general law in his favor will stand and prevail unless it is clearly and plainly changed; unless the terms of the particular law, so to speak, are as explicit and unambiguous as the general law and the rights under that general law which are intended to be taken away. Hence the rule, that to confer a separate estate upon a married woman, the words of the deed or instrument must plainly show, of themselves, the intention to confer upon her a *separate estate*, or, what amounts to the same thing, to *exclude* the *marital right* of the husband over the property. The books are so full of this that it is needless to cite any other than a few of the later authorities.—Cook v. Kennerly, 12 Ala. 42 ; Pollard v. Merrill, 15 Ala. 169 ; Geyer v. Br. Bank at Mobile, 21 Ala. 414 ; Brown v. Johnson, 17 Ala. 232 ; Gould v. Hill, 17 Ala. 84 ; 8 Yerg. 83.

Do, then, the words of this deed show a plain intention to exclude the marital right of the husband ? The terms chiefly relied on to show this, are the words, " to remain in peaceable possession," &c., " and to take the profits thereof to her *own* use, and the increase, interest and income thereof to her *own* use and benefit, during her natural life," &c., &c., and then " to descend to her heirs," &c.

The force of this word *"own"* has been often considered in this connection, and sound criticism has pronounced that it cannot be held to be equivalent to *sole* or *separate*. It does not point at the *marital right*, as these do. To say we take property to our *own* use, seems mainly intended to negative the idea that we are taking it for another, with some trust or agency.— " To have and hold the same to his own proper use and behoof," are words to be found in almost every deed a man takes to himself for land in fee simple, or absolute bill of sale for chattels.

It is a common sort of tautology, more used for sound and emphasis than to express any special quality of ownership out of the ordinary way. " 'To his use," "to his *own* use," "to his *own* proper use and behoof,"—what are they, but the same thing ? The meaning of the first words is not amplified in the least when we get to the last. There are more words, but that is all ; you gather no new idea. There is nothing besides in the deed which serves to take these words out of their ordinary signification. These, of themselves, will not create a separate estate in a married woman, even when the deed is made by herself, of her own property, on the day before her marriage, and when the man she is about to marry is insolvent.—Tyler v. Lake, 2 Russ. & M. 183, and cases there cited; Haig v. Haig, 1 Dess. 348 ; Lamb v. Wragg, 8 Por. 73 ; Lamb v. Milnes, 5 Ves. 521 ; Kensington v. Dolland, 2 M. & K. 184.

That both she and the man she was about to marry may have intended such a thing, is every way probable ; and if we were left to govern our action by conjectures, as to their intention, it would not go hard so to decide. But in the construction of what is written, we have but one way to get at the writer's meaning, and that is, through what he says, subjected to sound rules of criticism, rules proper to govern now and hereafter.

True, every instrument is to be viewed by the light of surrounding circumstances. The condition of the woman, and the man she was about to marry, at the time the deed was made, were therefore proper subjects of evidence, and so far the court did right in admitting the evidence objected to ; beyond this it was not proper to go ; what Gates said, after the marriage, or what he did, was not proper to show the true construction of this deed, and should have been excluded. If circumstances admitted in proof could be allowed to control the construction of this instrument, they would make the deed another deed ; they would change its character altogether. It would be to say, that if a woman marries a solvent man, certain words will not create a separate estate ; if she marries an insolvent one, they will. So that it would come to this : the condition of the husband, and not the words employed, would make the deed. And if what the husband did or said after the marriage could be looked to at all, the same effect would be given, not only to facts

and circumstances existing at the time, but to such as took place after the deed was made.

Where the instrument is complete as to the interest or right conveyed, and where it is only executory, we admit a just distinction is taken as to the meaning to be put on particular words. Strong v. Gregory, 19 Ala. 146. Here the instrument is not executory, but complete.

It will be seen that we think the court below erred, both in the charge which was given and in the refusal to charge as requested.

Let the judgment be reversed, and the cause remanded.