## JOHNSON'S ADM'R vs. JOHNSON.

[DETINUE FOR SLAVES, BY WIFE'S ADMINISTRATOR AGAINST SURVIVING HUSBAND.]

1. *Bequest to married woman construed not to create separate estate.*—A clause in a will, bequeathing real and personal property to the testator's several daughters, and directing that the respective shares "shall vest *absolutely* in them and their respective heirs of their bodies forever," does not create a separate estate in a daughter who was married at the date of the will.

2. *Admissibility of parol evidence in construction of will.*—Parol evidence is not admissible in explanation of a patent ambiguity in a written will; as to show that certain words were intended by the testator to create separate estates in his daughters.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN GILL SHORTER.

THIS action was brought by the administrator of Mrs. Jemima G. Johnson, deceased, against her surviving husband, William Johnson, to recover certain slaves, together with damages for their detention, which the plaintiff

claimed as the separate estate of his intestate, under the will of her father, George Phillips. The defendant pleaded, in short by consent, *non detinet*, and *ne unques administrator*.

The will of said George Phillips, which was dated in September, 1834, and admitted to probate in Dallas county on the 12th October, 1835, contained the following (with other) provisions: "It is my will and desire, that all my just debts be first paid, and the remainder of my estate, both real and personal, to be managed and distributed as follows, within one year after my decease: the whole of my estate, both real and personal, to be appraised by disinterested persons on oath, and to be equally divided amongst my beloved wife and my eight children, share and share alike, viz:" (mentioning the names of the children, and with the rest Mrs. Jemima G. Johnson, then the wife of the defendant.) "It is further my will and desire, that the shares, or dividends, that may be allotted by said division to my different daughters, shall vest absolutely in them and their respective heirs of their bodies forever."

It was proved that, on the division of the testator's property, in December, 1835, under the provisions of his will, some of the slaves sued for in this action were allotted to Mrs. Johnson, and went into the possession of her and her husband; that the others in suit were the descendants of those so allotted to her; that Mrs. Johnson died in May, 1837; and that all of said slaves remained in the possession of the defendant, from that time until the commencement of this suit. "The plaintiff offered to prove to the court, by William S. Phillips, who drew said will, that the testator, who was his father, had for many years kept a will provided, to be ready in the event of his death; that at the time said will above set out was executed, he had another will in his possession, which made the same disposition of his property, except that it did not contain this clause: 'It is farther my will and desire, that the *slaves*(?) which may be so allotted to my several daughters, on such division, shall vest absolutely in them and the heirs of their respective bodies forever;

that said will was then destroyed, and this will was pre-
pared to supply the deficiency in that; that Mr. Blevins
had persuaded the testator that it was his duty to so make
his will as to secure the property intended for his daugh-
ters to their separate use, and to their children; and that
it was under the influence of this persuasion that he made
his will in its present form, and changed his previous
intention as declared in said will. The court refused to
allow said proof to be made, either to the court or to the
jury; and ruled, that the words of the will were unam-
biguous, and had a fixed, legal signification, which could
not be explained, interpreted, or controlled by the parol
evidence; to which ruling of the court the plaintiff ex-
cepted."

On all the evidence adduced, the court charged the
jury that, if they believed it, they must find a verdict for
the defendant; to which charge the plaintiff excepted.
In consequence of these adverse rulings of the court,
which are now assigned as error, the plaintiff was com-
pelled to take a nonsuit, which he now moves to set
aside.

JOHN T. MORGAN, for the appellant.

ALEX. WHITE, and WM. M. BYRD, *contra.*

WALKER, J.—George Phillips by his will directed
the division of the remainder of his estate, both real and
personal, after the payment of debts, among his wife and
children. A subsequent clause of the will says: "It is
further my will and desire, that the shares, or dividends,
that may be allotted by said division to my different
daughters, shall vest absolutely in them and their respec-
tive heirs of their bodies forever." Do those words create
a separate estate in the testator's daughter, who was mar-
ried at the date of the will?

"The law favors the marital rights of the husband,"
and, to his exclusion, it is requisite that the intention
should clearly and unequivocally appear. The exclusion
is not to be inferred from doubtful and equivocal expres-
sions. The court is not to speculate upon what the prob-

able object of the donor was; nor can it base a conclusion, adverse to the husband's interest, upon a possibility or probability. The tendency of modern decisions is not to relax, but to restrict the rule. The principles which are above stated declare a less stringent test of the certainty with which the intention to exclude the husband must appear, than is prescribed by many of the authorities, and some of them Alabama decisions. It will be found by reference to the authorities cited below, that in what we have said we have not committed the fault of exacting too much as necessary to exclude the husband. Hill on Trustees, 420, 421; Tyler v. Lake, 2 Russ. & Mylne, 183; 2 Story's Eq. Ju. 1381; Jenkins v. McConico, 26 Ala. 213; Pollard v. Merrill & Eximer, 15 Ala. 174; Strong v. Gregory, 19 Ala. 146; Cuthbert v. Wolfe, 19 Ala. 373; Mitchell v. Gates, 23 Ala. 438; Hale v. Stone, 14 Ala. 803; Lamb v. Wragg & Stewart, 8 P. 73; Dunn v. Bank of Mobile, 2 Ala. 152; Inge v. Forester, 6 Ala. 418; Bank v. Wilkins, 7 Ala. 589; O'Neal v. Teague, 8 Ala. 345; Moss v. McCall, 12 Ala. 630.

For the sake of emphasis, we repeat what has already been in substance said, that the probability of an intention to exclude the husband is not sufficient. It is not enough that the mind is inclined by the arguments drawn from the instrument to a conclusion adverse to the husband's marital rights. For example, in two cases in North Carolina, the court, though inclined to think there was an intention to exclude the husband, refused to so decide, upon the ground that it could not be sure of it. Rudisell v. Watson, 2 Dev. 430; Ashcraft v. Little, 4 Iredell, 236.

It is conceded, that no technical expressions are requisite, and that we are to understand all words, except technicalities, in their common acceptation.

The word *absolute* has various significations, which it receives in popular use. It means complete, unconditional, not relative, not limited, independent of any thing extraneous. In its signification of complete, not limited, it is used in the law to distinguish an estate in fee from an estate in remainder.—See Webster's and Johnson's

Dictionaries, and the British Encyclopedia—absolute. In its signification of unconditional, it describes a bond, or conveyance, or estate, without condition. In its signification of "not relative," it describes the rights of man in a state of nature, as contradistinguished from those which pertain to him in his social relations. In its sense of independent of any thing extraneous, it is used in algebra to designate "any pure number standing without the conjunction of literal characters." It is in this last signification that the word is supposed to import an exclusion of the husband's marital rights. If that signification were known to have been the one designed by the testator, it is by no means certain that it would import an exclusion of the husband. It would rather characterize a pure estate, unmixed and unconnected with any peculiarities or qualifications; a naked estate, *freed from* every qualification and restriction, in the donee. This was the light in which the word was regarded by the judges who delivered the opinions in the two cases of Hamilton v. Bishop & Fly, 8 Yerg. 40, and Rudisell v. Watson, 2 Dev. Eq. 432. In both of these decisions, the judges use the word *absolute* to describe the estate given to a married woman without the exclusion of the husband, in contradistinction to an estate qualified with that exclusion; a sense precisely the opposite of that sought to be given it in this case.

We doubt whether the word absolute is ever used in a sense which would import an exclusion of the marital rights. But it is certainly not *clear* that it is used in such a sense in the will under consideration. This would be sufficient, under the rule, to defeat the argument for a separate estate. The case, however, against the appellant is much stronger. The most usual acceptation of *absolute*, when used in reference to estates, is certainly not independent, but the opposite of partial or conditional. Thus, we say one takes the absolute estate, not an estate for life; or an absolute estate, not a mortgage. If it is ever used to designate an estate vested in a married woman, with the superadded characteristic of the husband's exclusion, it is a most rare, and, it seems to us, rather strained application of the term.

Rycroft v. Christie, 3 Beavan, 238, and *ex parte* Abbot, 1 Deacon, 338, are cases bearing directly upon the question of the force of the word *absolute*, and denying its capacity to effect the husband's exclusion.

There is a *dictum* in the case of Furlow's Adm'r v. Merrill, 23 Ala. 705, 715, as to the signification which the words, "I give to my daughter, Cynthia Hill, one negro girl named Ann, together with all her increase, *entirely* for my daughter and her children," would have had if standing alone. The word *entirely* has a location which makes it descriptive of the enjoyment of the property, and not of the title; and it may have been supposed to have the effect of giving the whole exclusive use or enjoyment of the property to the *feme covert* and her children, and therefore to exclude the husband.—Blacklaw v. Laws, 2 Hare, 40. The word "entirely," in that connection, certainly affords no analogy for the interpretation of the word "absolutely," when it qualifies the vesting of the title. For the word "absolutely," when qualifying the vesting of the title, does not, as we have seen, in ordinary acceptation, import an exclusion of the husband, and certainly does not necessarily imply such exclusion. The words "only," in Ikelheimer v. Ozley, 26 Ala. 336; and "exclusively," in Gould v. Hill, 18 Ala. 84; and "independent," in Margetts v. Barringer, 7 Simon, 482; and "to and for her use, benefit, and right, and of the heirs aforesaid, without let, hinderance, or molestation whatever," in Newman v. James, 12 Ala. 29, are not like or equivalent in meaning to the words here used. They are all words which necessarily point to the exclusion of any other right than the wife's. The word absolutely, as we have already explained, is an appropriate expression for the exclusion of the idea, that the estate was either partial or conditional. "Only," "independently," "without let, molestation, or hinderance whatever," are not words appropriate to describe the duration or unconditional character of the estate, and are regarded as necessarily implying an intention to exclude the husband, because they do not reasonably imply any thing else. The words in this case are much more reasonably suscept-

ible of a different meaning, and, of course, cannot be said to necessarily imply, or to unequivocally and clearly indicate, the intention to exclude the husband's marital rights.

We are not to speculate upon the probability that the testator intended to exclude the husband. The fact that the testator, after vesting the title under his will alike in all the objects of his bounty, went on to make the further and other provision in reference to his daughter, is an equivocal circumstance, which may be attributed to a desire to render the estates of his daughters separate, or to a desire to create an estate tail. Perhaps it would be difficult to distinguish between the weight of probability in favor of either hypothesis. The latter is somewhat fortified by the fact, that the technical words requisite to create an estate tail are used. But, if there was a probability, which inclines the mind, without fully and clearly convincing it, in favor of the intention to make the estate separate, it would not be enough. For the rule, that the intention must be clear, is one founded upon the common-law doctrine, that the husband's marital rights are to be favored, and that separate estates are in derogation of right; and that rule is so sustained by authority, that no court can disregard it, in a case where the rights of the parties are governed by the common law. We are not permitted by that rule to speculate upon the probabilities.

It must be admitted, that our argument allows no effect to the word *absolutely*, and that in the construction of wills it is always a duty to strive to allow some effect to all the words. But the authorities show, that the courts prefer to deny any actual effect to such a word as *absolutely*, for instance, rather than, upon a word of equivocal and doubtful meaning at most, to build a separate estate. The creation of a separate estate has been denied, although all effect was thus taken away from the following expressions: " To remain in peaceable possession, to her own use and benefit," (Mitchell v. Gates, 23 Ala. 43 ;) " to pay the same into *their own proper and respective hands*, to and for their own respective use and benefit," (Tyler v.

Lake, *supra ;*) "to her own proper use and benefit," (Blacklow v. Laws, 2 Hare, 40 ;) "all to be for her and heirs' proper use," (Rudisell v. Watson, 2 Dev. Eq. 430 ;) "but the said gift to extend to no other person," (Ashcraft v. Little, 4 Ired. Eq. 236 ;) "for the use, benefit and behoof of," (Torbert v. Twinning, 1 Yeates, 432;) "to have the use and benefit of the labor and services of the said slaves, and all the proceeds thereof, during her life," (Hale v. Stone, 14 Ala. 803.) Such words are often used merely by way of emphasis, and it is not improbable that absolutely is used in that way in this case.—Mitchell v. Gates, 23 Ala. 438 ; Tyler v. Lake, *supra.*

While we do not commit ourselves to all the cases cited, and while we admit that there are many cases which can not be reconciled with some of them ; yet they serve as illustrations of the position, that the court will rather deny any effect to an ambiguous, equivocal expression, than predicate a separate estate upon a mere probable inference. Indeed, while the cases agree very well as to the general rule which governs in determining the question of a separate estate, they are not at all in harmony in the application of the rule. There is, perhaps, no branch of law, upon which there is such a bewildering variety of decisions; yet we believe there are none which go far enough to sustain the right of the plaintiff in this case.

We do not wish to be understood as saying there must be some word of itself excluding the husband's right. The question is one of intent, and may be gathered from a view of the entire instrument in all its parts. "And it is sufficient that the intent was to secure the property to the use of the wife, in such a mode as to be inconsistent with the enjoyment of the gift by the husband, or with the exercise of dominion over it by him."—Williams v. Maull, 20 Ala. 729. But we look to the will in this case in vain for any thing which shows with clearness the intention to interfere with the dominion of the husband, or to exclude his right.

[2.] The parol evidence was not admissible to control the construction of the will. Whatever ambiguity there

may be, is patent; and parol evidence is not admissible for its explanation.—Abercrombie v. Abercrombie, 27 Ala. Rep. 489.

The judgment of the court below is affirmed.