## CALDWELL *vs.* PICKENS' ADM'R.

[BILL IN EQUITY BY WIFE, AGAINST PURCHASER AT EXECUTION SALE AGAINST HUSBAND, FOR RECOVERY OF SLAVES, ACCOUNT OF HIRE, &C.]

1. *Presumed gift, and how disproved.*—When a father sends a slave home with his newly married daughter, the law presumes that a gift was intended, unless a different intention is expressed at the time; but this presumption may be repelled by proof of the contemporaneous acts and declarations of the grantor, showing that a loan only was intended.

2. *Deed of gift to "only proper use" of grantor's married daughter, held to create separate estate.*—A deed of gift, by which a father conveys a female slave to his married daughter, "to the only proper use and behoof of the said Margaret and her bodily heirs, her executors, administrators, and assigns forever," creates a separate estate in the grantee.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 28th March, 1860, by Mrs. Margaret C. Pickens, suing by her next friend, against her husband, James V. Pickens, John C. Caldwell, and Samuel Oliver; and sought a recovery of certain slaves, (or a decree for their value,) with an account of their hire. The complainant claimed a separate estate in the slaves, under a deed of gift from her father, Sample Orr, which was dated the 23d July, 1840, and a copy of which was made an exhibit to the bill. The slave conveyed by said deed, who was the mother of the other slaves in controversy, was seized under an attachment, at the suit of the defendant Caldwell, as the property of the complainant's husband, James V. Pickens, on the 18th March, 1846; and on the 9th November, 1847, after the rendition of judgment in the attachment suit, was sold under the attachment, and under an execution issued on the judgment. The defendant Caldwell became the purchaser at the sheriff's sale, and, on the 31st December, 1847, sold and conveyed said slave to the defendant Oliver, who removed to Texas before the bill was filed, and carried the slaves with him. The following is a copy of the deed of gift, under which the complainant asserted title to the slaves:

"State of Alabama, ⎫ Know all men by these pres-
  Dallas county.   ⎬ ents, that I, Dr. Sample Orr, of
the State and county aforesaid, for and in consideration of the natural love and affection which I bear to my daughter, Margaret Pickens, of said State and Lowndes county, as well as for the further consideration of the sum of three hundred dollars to me in hand paid, by the said Margaret Pickens, at and before the ensealing and delivery of these presents, (the receipt whereof is hereby acknowledged,) have given and granted, and, by these presents, do give and grant, unto the said Margaret Pickens, and to her bodily heirs, a certain female slave, named Amy, aged about nine years old; to have and to hold the said female negro slave, with her future increase, to the only proper use and behoof of the said Margaret Pickens and her bodily heirs, her ex-

ecutors, administrators, and assigns forever. And I, the said Dr. Sample Orr, for himself, his executors, and administrators, the said female negro slave, with her future increase, unto the said Margaret Pickens and her bodily heirs, her executors, administrators, and assigns, against the claim of him, the said Dr. Sample Orr, his executors, administrators, and against the claim or claims of all and every person and persons whatsoever, shall and will warrant and forever defend by these presents. In witness whereof," &c.

A decree *pro confesso* was taken against James V. Pickens, and also, on publication, against Samuel Oliver. The defendant Caldwell demurred to the bill, on several specified grounds, all of which were overruled by the chancellor. He also answered the bill, alleging that the slave Amy was given to the complainant by her father, several years before the date of the deed, and passed into the possession and control of her husband under that gift; and he insisted that the husband's marital rights had attached to the slave, and that the deed of gift, if executed, was intended to defeat the just claims of his creditors.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; and his decree is now assigned as error.

GOLDTHWAITE, RICE & SEMPLE, for appellant.

STONE, J.—Among the facts about which there seems to be no controversy in this case, we think we may safely lay down the following: That Sample Orr, the father of Mrs. Pickens, was the former owner of the slave Amy, who, with her increase, is the subject of the present suit; that Amy was sent by Sample Orr, the father, in company with Mrs. Pickens, to the home of herself and husband, in the year 1837, and remained there until she was seized and sold as the property of the husband, under an attachment and execution in favor of Caldwell, the levy being made in 1846, and the sale by the sheriff to Caldwell in 1847; that prior to 1837—date not given—the complainant had intermarried with James V. Pickens, the defendant in the attachment

suit under which the slave Amy was sold; and that on the 23d day of July, 1840, Sample Orr executed the deed to the complainant, which is attached to the bill as an exhibit.

[1.] Looking alone at the unexplained act of Mr. Orr in sending the slave home with his married daughter, Mrs. Pickens, in the year 1837, the law raises the presumption that she was sent as an advancement—was a gift,—and on such presumption, unrebutted, the title of the husband to the property would at that time attach.—*Merriwether v. Eames,* 17 Ala. 332; *Rumbly v. Stainton,* 24 Ala. 716; *Burnett v. Branch Bank,* 22 Ala. 643; *Hill v. Duke,* 6 Ala. 261; *Olds v. Powell,* 7 Ala. 655; *O'Neil v. Teague,* 8 Ala. 345.

It is alleged, however, that at the time Amy was sent to Mrs. Pickens, (1837,) it was understood and agreed that she was sent as a loan; that she was accepted as such, and that in 1840, a deed of gift was executed by Mr. Orr to his daughter, Mrs. Pickens, securing said slave to her separate use. Whether or not she was sent as a loan, is the first question for our consideration.

The presumption which the law raises, that property sent by a father to his child, recently married, is a gift, may be rebutted by proof that a less estate was intended. It is said, however, in a well-considered case, that "this must be done by clear and satisfactory proof that it was notoriously and expressly understood not to be a gift at the time."—*Hill v. Duke,* 6 Ala. 261–2. See, also, *Norris v. Bradford,* 4 Ala. 205. The declaration that the intention was not to give, "should be open and clear, and not left to be inferred from doubtful or ambiguous circumstances, which the donor might avail himself of, or suppress at his pleasure."—*Miller v. Eatman,* 11 Ala. 613.

In the case of *Olds v. Powell,* (7 Ala. 655,) speaking of the character of the proof which may be resorted to, on the question of gift *vel non,* the court said, "It is not easy to conceive of any more conclusive mode of ascertaining the intention, than by the declarations of the donor at or about the time."—See, also, *Powell v. Olds,* 9 Ala. 865; *O'Neil v. Teague,* 8 Ala. 345.

Under the rule laid down in the case of *Cole v. Varner,* (31 Ala. 248,) we think the evidence in this record is suffi-

cient to establish the fact, that, at the time the slave Amy went into the possession of Mrs. Pickens, it was known and understood that she went as a loan, and not as a gift. The proof in this record, made by the witness Mrs. Clay, is quite as full to establish the understanding, and to repel the presumption of a gift, as was the proof of the single witness to prove the loan in that case. In fact, the proof in this case, by Mrs. Clay, is fuller than it was in that, by Mr. Varner. In addition, we have, in this case, the corroborating testimony of Mr. Clay, that the slave Amy did not go to Mrs. Pickens as a gift. True, the two witnesses differ as to the expressed ulterior intentions of Mr. Orr; but they do not differ as to the substance and effect of what was then done. This testimony is wholly unlike that which was commented on, and held insufficient, in the cases of *Bennett v. Branch Bank*, 22 Ala. 642, and *Rumbly v. Stainton*, 24 Ala. 715.

[2.] The result of this case, then, must depend on the next inquiry; namely, does the deed of gift from Mr. Orr to Mrs. Pickens exclude the marital rights of her husband? The language of its *habendum* clause is: "To have and to hold the said female negro slave, with her future increase, to the only proper use of the said Margaret Pickens and her bodily heirs, her executors, administrators, and assigns forever." Unless this clause contain words of exclusion, there are none in the deed.

When this identical title to these slaves was before this court at a former term, between the present complainant and her husband as plaintiffs, and one of the defendants to this suit as defendant, in construing the deed of gift from Sample Orr to Mrs. Pickens, we said: "The uncontroverted proof in this case is, that the *feme covert* plaintiff had a separate estate, created by deed, in the slaves for the recovery of which the suit is brought."—*Pickens v. Oliver*, 32 Ala. 627. If this decision be adhered to, it is decisive of the present case. But we are asked to review the grounds of our former decision; and under the statute, it is our privilege, if not our duty, to do so.—Acts of called session, January, 1862, p. 33.

It is the settled law of this State, of most or all of the

other States, and of England, that no particular words or phrases are necessary to the creation of a separate estate. The intention is to be gathered from the language of the gift; and if there be found in the gift, whether written or oral, words which show that the rights of the husband are excluded, this is enough to secure the property to the sole use of the wife. The following decisions of this court contain examples of words which are held to be sufficient to exclude the marital rights of the husband : *Gould v. Hill*, 18 Ala. 84; *Strong v. Gregory*, 19 Ala. 146 ; *Cuthbert v. Wolfe, ib.* 373 ; *Williams v. Maull*, 20 Ala. 721; *Jenkins v. McConico*, 26 Ala. 213; *Ozley v. Ikelheimer*, 26 Ala. 332. And the following are examples that are not sufficient to create a separate estate : *Harkins v. Coalter*, 2 Porter, 463 ; *Lamb v. Wragg*, 8 Porter, 73; *Dunn v. Bank of Mobile*, 2 Ala. 152 ; *Inge v. Forrester*, 6 Ala. 418 ; *Branch Bank v. Wilkins*, 7 Ala. 588 ; *O'Neil v. Teague*, 8 Ala. 345 ; *Cook v. Kennerly*, 12 Ala. 42 ; *Moss v. McCall*, 12 Ala. 630 ; *Bender v. Reynolds*, 12 Ala. 446; *Pollard v. Merrill*, 15 Ala. 169 ; *Hale v. Stone*, 14 Ala. 803 ; *Geyer v. Branch Bank*, 21 Ala. 414; *Mitchell v. Gates*, 23 Ala. 438 ; *Johnson v. Johnson*, 32 Ala. 637.

The following authorities may also be consulted on this question : *Hamilton v. Bishop*, 8 Yerger, 33 ; *Torbert v. Twining*, 1 Yeates, 439 ; *Lee v. Prieaux*, 3 Bro. C. C. 385, note ; *Wills v. Sayers*, 4 Madd. 409 ; *Blacklow v. Laws*, 2 Hare, 49 ; *Tyler v. Lake*, 2 Russ. & Mylne, 183 ; *Roberts v. Spier*, 5 Madd. 491 ; *Beales v. Spencer*, 2 Younge & Coll. 651 ; *Lamb v. Milnes*, 5 Vesey, 517 ; *Rycroft v. Christy*, 3 Beav. 238 ; *Wardle v. Claxton*, 9 Sim. 524 ; *Kensington v. Dolland*, 2 Myl. & K. 184 ; *Rudisell v. Watson*, 2 Dev. Eq. 430 ; *Ashcraft v. Little*, 4 Ired. Eq. 236. A summary of the words and phrases pronounced upon by the courts may be found in the following authorities : 2 Story's Equity, §§ 1382, 1383 ; Hill on Trustees, 420 ; 2 Bright on Husband and Wife, 204 ; *Harkins v. Coalter*, 2 Porter, 463 ; *Lamb v. Wragg*, 8 Porter, 73 ; *O'Neil v. Teague*, 8 Ala. 345 ; *Johnson v. Johnson*, 32 Ala. 637.

It will be seen from the authorities cited above, that where gifts are made to unmarried women, stronger language is required to exclude the marital rights, than if the

donee be a married woman.—See *Gould v. Hill*, 18 Ala. 84; *Cuthbert v. Wolfe*, 19 Ala. 377; *Jenkins v. McConico*, 26 Ala. 237.

There has been much discussion on the legal import of the phrases "*own use,*" and "*proper use,*" when found in deeds to married women. These, it is now settled, do not create a separate estate.—See *Mitchell v. Gates*, 23 Ala. 446; *Blacklow v. Blacklow*, 2 Hare, 49; *Kensington v. Dolland*, 2 Myl. & K. 184; *Rudisell v. Watson*, 2 Dev. Eq. 430.

The language of the present deed is, "*only proper* use." These words are much stronger than *own* and *proper*, when found separately. Whether we attach to the word *proper* the meaning of *own*, or of *peculiar*, as the different authorities have it, the word *only* remains, which is strictly a word of exclusion. In *Cuthbert v. Wolfe*, (19 Ala. 376,) this court ruled, that the words, "to and for the *only* use and benefit" of a married woman, created a separate estate. This is an authority directly in point; for, in that case, the word "only" was the cardinal word of the deed—the only word of exclusion.—See, also, *Ozley v. Ikelheimer*, 26 Ala. 336.

There is no error in the decree of the chancellor, and it is affirmed.