# Conner *v.* Williams.

*Bill in Equity to annul Conveyances as Mortgage of Wife's Statutory Estate.*

1. *Statutory separate estate; what creates.*—A conveyance to a married woman, "to have and to hold the premises hereby conveyed, to herself and her heirs, forever, for their own proper use and benefit," creates a statutory, not an equitable estate.

2. *Statutory estate; power of wife to mortgage.*—It is the settled law of this State, that a married woman can not mortgage her statutory estate, for the payment of the husband's debt.

3. *Same; what will be treated as mortgage of.*—If husband and wife convey her statutory estate to a third person, who mortgages it to one advancing money on the faith of it, knowing at the time the transaction was a device to obtain a loan of money for the husband, by mortgage of the wife's statutory estate, a court of equity will annul the conveyances, and avoid the entire transaction so far as affects the wife.

APPEAL from Circuit Court of Mobile, sitting in chancery. Heard before Hon. H. T. TOULMIN.

The appellee, Louisa Williams, filed her bill on the equity side of the Circuit Court, against Price Williams and Robert, his son, composing the firm of Williams & Son, and against her own son John, and Mrs. Elizabeth Conner. The object of the bill was to annul and set aside a deed made by Mrs. Williams to her son, and a mortgage made by him to the

appellant, Conner, on the ground that the conveyance and mortgage were a mere contrivance or scheme, in which respondents participated, to mortgage her statutory estate, to secure a loan of money made to her husband. The cause was submitted on bill, answers and testimony, and a decree rendered granting the relief prayed, annulling the conveyance and mortgage so far as the same affected complainant, and perpetually enjoining respondents from prosecuting any suit, based on said deed and mortgage, for the recovery or possession of the premises.

It was shown that Louisa Williams, who was then a married woman, and wife of John A. Williams, who died in 1872 before the filing of the bill, received a conveyance to the premises in controversy from Charles Leach and his wife, on the 17th day of October, 1865. This conveyance recites that it was made in consideration of the sum of twenty-three hundred dollars paid the grantors by the said Louisa, and its *habendum* clause was as follows: "To have and to hold said premises hereby conveyed, to herself, the said Louisa Williams, and her heirs forever, for their own proper use and benefit."

The bill charges that Levi Williams, the husband of appellee, being anxious to obtain a loan of money, applied to Williams & Son, proposing to mortgage the property in controversy to secure them; that Williams & Son, after examining the title and seeing it was in complainant, refused to advance any money on such security, but suggested they would make the desired loan, if said Levi and complainant would convey the property to her son, John A., and he, in turn, mortgage it to secure the loan; that accordingly, Mrs. Williams made a conveyance to the son, and he mortgaged it to Mrs. Conner, and Levi Williams obtained the desired loan; and that the entire transaction was a scheme, in which respondents participated, with a view of evading the "married woman's law," and mortgaging Mrs. Williams' statutory estate, to secure a debt of her husband.

The answers deny this, and state, on the contrary, that the proposition to make the conveyance to said John A., and to take his mortgage, came from said Levi, who assumed to act as his agent in the premises, and that the entire transaction on the part of respondents was a *bona-fide* loan of money to said John A.; that respondents were ignorant of the consideration or motives which induced the conveyance to said John A., and that Williams & Son merely acted as brokers of Mrs. Conner, who had left money with them to

loan on good security, and she, who was a non-resident, knew nothing of it, until the loan had been made and the conveyances executed.

Several witnesses were examined on behalf of each of the parties, and their testimony went minutely into the circumstances attending the transaction. The testimony of complainant's witnesses sustained her version of the transaction as stated in her bill; and that of the respondent's witnesses supported the allegations of the answers. There was decided conflict in the testimony in many material aspects, and it would serve no useful purpose to detail it at length.

The decree rendered is now assigned for error.

JOHN R. TOMPKINS, for appellant.

ANDERSON & BOND, contra.

STONE, J.—The *habendum* clause of the deed under which Mrs. Louisa Williams held the lot which is in controversy in the present suit, is in the following language: "To have and to hold said premises hereby conveyed to herself, the said Louisa Williams, and her heirs, forever, for their own proper use and benefit."

In *Mitchell v. Gates*, 23 Ala. 446, this court said: "The force of this word, *own*, has often been considered in this connection, and sound criticism has pronounced that it can not be held to be equivalent to sole or separate. It does not point at the *marital right* as these do. To say we take property to our own use, seems mainly intended to negative the idea we are taking it for another, with some trust or agency. 'To have and to hold the same to his own proper use and behoof,' are words to be found in almost every deed a man takes to himself for land in fee-simple, or absolute bill of sale for chattels. . . 'To his use,' 'to his own use,' 'to his own proper use and behoof,' what are they" but words used "more for sound and emphasis than to express any special quality of ownership out of the ordinary way?" . . . "These of themselves will not create a separate estate in a married woman."

In *Johnson v. Johnson*, 32 Ala. 643, the above authority and others of similar import are cited approvingly. "To her own use and benefit," "for their own respective use and benefit," "to her own proper use and benefit," and "for the use, benefit and behoof of," are severally pronounced insufficient to create a separate estate. So, in *Caldwell v. Pickens*,

39 Ala. 520, it is said the words "own use" and "proper use" do not exclude the marital rights.

We hold that the lot in controversy in the present case was the statutory separate estate of Mrs. Williams, and that the rights of these parties must be tested from that stand-point.

Under the principle above announced, if the mortgage brought to view in the present record be, in effect, only the mortgage of Mrs. Williams, made to secure a debt for borrowed money, such mortgage was unauthorized, and does not bind her property. In the case of *Northington v. Faber,* 52 Ala. 47, we said: "That the wife can not make a valid mortgage of her statutory separate estate to secure the payment of her husband's debts, is now the settled law of this State; and it is also settled that every such mortgage is forbidden by law, and void." *Bibb v. Pope,* 43 Ala. 90, and *Wilkinson v. Cheatham,* 45 Ala. 337, asserting the same principle, were cited and approved. In *Smith v. Coleman,* at the present term, we affirmed the same doctrine. The contract for the loan in the present case was negotiated by Levi Williams, husband of complainant; and the question arises, is the mortgage to be treated as made by Mrs. Louisa Williams? or, had the title become vested in her son, John A. Williams, so as to constitute him the borrower of the money and the maker of the mortgage? This resolves itself into a second inquiry: Was the transfer of title to John A. Williams a real sale or conveyance, or so presented to Williams & Son, the brokers, as to appear to be a real transaction? or, was it a device, in which the brokers participated, by which the contracting parties sought to evade or circumvent Mrs. Williams' incapacity to give a valid mortgage security? The testimony on this disputed question was conflicting. The circuit judge, sitting as chancellor, decreed in favor of complainant, and thereby necessarily affirmed that the second of the above alternate propositions was established to his satisfaction. There is not enough in this record to convince us that he erred in so ruling.

It being thus shown that the deed to John A. Williams, and mortgage by him, were resorted to as a means of borrowing money on mortgage of lands that were the statutory separate estate of Mrs. Williams, and that Williams & Son, the brokers, knew the purpose for which it was done, or that they procured it to be done for the purpose, we must treat this transaction as if the mortgage were made directly by Mrs. Williams. That which can not be done directly,

can not be done indirectly.—See 1 Brick. Dig. 533, § 73.

Interpreting the finding of the court as we feel bound to do, this case is brought directly within the principle declared in *Northington v. Faber, supra.*

The decree of the Circuit Court is affirmed.